IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

L.J., et al.,                                    *

    Plaintiffs,                          *

    v.                                   *          Civil Action No. JFM-84-4409

RUTH MASSINGA, et al.,                           *

    Defendants.                          *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM IN OPPOSITION TO
## DEFENDANTS' MOTION TO VACATE

Mitchell Y. Mirviss
  Fed. Bar No. 05535
Venable LLP
750 East Pratt Street                    .
Suite 900
Baltimore, MD  21202
(410) 244-7400
Fax: (410) 244-7742
mymirviss@venable.com

Rhonda Lipkin
  Fed. Bar No. 04120
Public Justice Center
One North Charles Street
Suite 200
Baltimore, MD  21201
(410) 625-9409
Fax: (410) 625-9423
lipkinr@venable.com

Attorneys for Plaintiffs

# TABLE OF CONTENTS

OVERVIEW ........................................................................................................1

BACKGROUND HISTORY .............................................................................5

ARGUMENT ......................................................................................................7

    I.     The *Horne* Decision Does Not Apply to Defendants' Motion. ....................7

        A.    *Horne* does not pertain to subject matter jurisdiction.......................7

        B.    Defendant's Motion properly falls under Fed. R. Civ. P. 60(b)(4) not Fed. R. Civ. P. 60(b)(5) as in *Horne*............................................8

    II.    This Court Has Subject Matter Jurisdiction of the Consent Decree. .............10

        A.    Defendants incorrectly treat the alleged lack of a private cause of action as a matter of subject matter jurisdiction...........................11

        B.    Even if Defendants did present a colorable challenge to subject matter jurisdiction, their defense is barred by res judicata. ...............13

    III.    Plaintiffs' Complaint Alleged Valid Federal Claims Sufficient to Support Subject Matter Jurisdiction. ..........................................................................19

        A.    Overview..........................................................................................19

        B.    Substantive due process. ..................................................................21

        C.    Federal child welfare statutes...........................................................27

        D.    Conclusion. ......................................................................................38

    IV.    Defendants' Rule 60(b)(5) Analysis Is Fatally Flawed. ...............................38

        A.    The Motion was not filed within a reasonable time...........................38

        B.    Defendants do not assert any equitable considerations other than their legal argument that the Court lacks subject matter jurisdiction. ......................................................................................40

C.   The Supreme Court's decision in *Horne* does not apply to Defendants' motion and in any event does not justify Defendants' requested relief. .................................................................41

D.   The original Consent Decree and the new proposed Modified Consent Decree are equitable and satisfy any federalism concerns raised in *Horne* and confirm that continued enforcement by this Court is not "detrimental to the public interest." ...............................43

CONCLUSION .................................................................................................48

**Cases**

Agostini v. Felton,
    521 U.S. 203 (1997)...........................................................................................10

Alger v. County of Albany,
    489 F. Supp. 2d 155 (N.D.N.Y. 2006) ...........................................................25

Anderson v. Houstoun,
    00-cv-04148 (E.D. Pa. Apr. 1, 2005) ..............................................................20

Angela R. by Hesselbein v. Clinton,
    999 F.2d 320 (8th Cir. 1993) ..........................................................................12

Angela R. v. Clinton,
    91-cv-0415 (E.D. Ark.)....................................................................................20

Arbaugh v. Y & H Corp.,
    546 U.S. 500 (2006)........................................................................................11

Aristotle P. v. Johnson,
    721 F. Supp. 1002 (N.D. Ill. 1989) .................................................................20

Aristotle P. v. Johnson,
    88-cv-07919 (N.D. Ill. Mar. 11, 1994) ...........................................................20

ASW v. Oregon,
    424 F.3d 970 (9th Cir. 2005) ..........................................................................35

ASW v. State of Oregon,
    03-cv-06038 (Dist. Or. Oct. 10, 2008).............................................................20

B.H. v. Samuels,
    88-cv-05599 (N.D. Ill.) ...................................................................................20

Baby Neal v. Casey,
    90-cv-02343 (E.D. Pa. Feb. 1, 1999) ..............................................................20

Ball v. Rodgers,
    492 F.3d 1094, 1117 (9th Cir. 1997) .........................................................30, 33

Barlak v. City of Chicago,
    81 F.3d 658 (7th Cir. 1996) ............................................................................16

Basel v. Bielaczyz,
    No. 74-40135-BC, 2009 WL 2843906 (E.D. Mich. Sept. 1, 2009)................10

Bell v. Hood,
    327 U.S. 678 (1946)..................................................................................11

Blessing v. Freestone,
    520 U.S. 329 (1997)............................................................................13, 36

Braam v. State,
    81 P.3d 851 (Wash. 2003)......................................................................24

Brian A. v. Sundquist,
    00-cv-00445 (M.D. Tenn. Jul. 26, 2001).............................................20

Brian A. v. Sundquist,
    149 F. Supp. 2d 941 (M.D. Tenn. 2000)..............................................35

Cal. Alliance of Child and Fam. Servs. v. Allenby,
    459 F. Supp. 2d 919 (N.D. Cal. 2006).................................................35

Central Operating Co. v. Util. Workers of Am.,
    491 F.2d 245 (4th Cir. 1974)................................................................38

Charlie H. v. Whitman,
    83 F. Supp. 2d 476 (D.N.J. 2000).........................................................25

Charlie H. v. Whitman,
    99-cv-3678 (D.N.J. Sept. 2, 2003).......................................................20

Chicot County Drainage Dist. v. Baxter State Bank,
    308 U.S. 371 (1940)..............................................................................13

City of Revere v. Mass. Gen. Hosp.,
    463 U.S. 239 (1983)..............................................................................21

Clark K. v. Quinn,
    No. 2:06-CV-1068-RCJ-RJJ, 2007 WL 1435428 (D. Nev. May 14, 2007) ...................35

Clark v. Willden,
    06-cv-01068 (D. Nev. Aug. 30, 2006)..................................................20

Clayton v. Ameriquest Mortg. Co.,
    388 F. Supp. 2d 601 (M.D.N.C. 2005).................................................39

Coalition of Black Leadership v. Cianci,
    570 F.2d 12 (1st Cir. 1978)...................................................................18

Conway v. Takoma Park Vol. Fire Dept., Inc.,
    Civ. A. Nos. DKC-86-1611, 88-65, 2001 WL 194081 (D. Md. Feb. 26, 2001)..............39

Cooper v. Productive Transp. Servs., Inc. (In re Bulldog Trucking, Inc.),
    147 F.3d 347 (4th Cir. 1998) ........................................................................9

D.B. v. Granholm,
    06-cv-13548 (E.D. Mich. Oct. 24, 2008)......................................................20

D.G. by Stricklin v. Henry,
    594 F. Supp. 2d 1273 (N.D. Okla. 2009).......................................................13

D.G. v. Henry,
    08-cv-00074 (N.D. Okla. Feb. 13, 2008).......................................................20

Daniel H. v. City of New York,
    115 F. Supp. 2d 423 (S.D.N.Y. 2000)............................................................25

David C. v. Leavitt,
    93-cv-00206 (D. Utah Aug. 29, 1994) ..........................................................20

Del A. v. Roemer,
    777 F. Supp. 1297 (E.D. La. 1991).................................................................25

Des Moines Nav. & R. Co. v. Iowa Homestead Co.,
    123 U.S. 552 (1887).........................................................................................15

DeShaney v. Winnebago County Dep't of Soc. Servs.,
    489 U.S. 189 (1989)..................................................................................passim

Doe v. Kidd,
    501 F.3d 348, 355-57 (4th Cir. 2007) ...........................................................33

Doe v. N.Y. City Dept. of Soc. Servs.,
    649 F.2d 134 (2d Cir. 1981)...........................................................................24

E.C. v. Blunt,
    05-cv-00726 (W.D. Mo. Aug. 4, 2006) .........................................................20

Eberhardt v. Integrated Design & Const., Inc.,
    167 F.3d 861 (4th Cir. 1999) ..........................................................................9

Edmiston v. Washington,
    No. C07-5379RJB, 2008 WL 2718946 (W.D. Wash. 2008) ..........................

Emily J. v. Weicker,
    93-cv-01944 (D. Conn. Feb. 6, 1997).............................................................20

Eric L. v Bird,
    848 F. Supp. 303 (D.N.H. 1994)....................................................................13

Eric L. v. Bird,
    91-cv-00376 (D.N.H. Jul. 29, 1997) ........................................................................20

Estelle v. Gamble,
    429 U.S. 97 (1976) ....................................................................................................21

Evans v. City of Chicago,
    10 F.3d 474 (7th Cir. 1993) ...............................................................................16, 42

Freeport-McMoRan Inc. v. K N Energy, Inc.,
    498 U.S. 426 (1991) ..................................................................................................18

Frew v. Hawkins,
    540 U.S. 431, 442 (2004) ..........................................................................................39

G.L. v. Stangler,
    873 F. Supp. 252 (W.D. Mo. 1994) ..........................................................................20

Gary H. v. Hegstrom,
    831 F.2d 1430 (9th Cir. 1987) ..................................................................................24

Germany v. Vance,
    868 F.2d 9 (1st Cir. 1989) .........................................................................................24

Gonzaga Univ. v. Doe,
    536 U.S. 273 (2002) ..................................................................................................13

Hampton v. Motley,
    911 F.2d 722 (Table), 1990 WL 120673 (4th Cir. Aug. 22, 1990) ..........................26

Hernandez v. Tex. Dept. of Protective and Reg. Servs.,
    380 F.3d 872 (5th Cir. 2004) ....................................................................................24

Horne. v. Flores,
    __ U.S. __, 129 S. Ct. 2579 (2009) ...................................................................passim

Hudson v. City of Salem,
    No. CV-07-226-ST, 2009 WL 1227770 (D. Or. May 1, 2009) .................................24

Hydrick v. Hunter,
    466 F.3d 676 (9th Cir. 2006) ....................................................................................24

Jeanine B. v. Thompson,
    877 F. Supp. 1268 (E.D. Wis. 1995) .........................................................................35

Jeanine B. v. Thompson,
    93-cv-00547 (E.D. Wis. Dec. 3, 2002) ......................................................................20

Johnson v. Solomon,
    484 F. Supp. 278 (D. Md. 1979) ....................................................................22

Joseph A. v. N.M. Dept. of Human Servs.,
    80-cv-00623 (D.N.M.) ................................................................................20

Juan F. v. Rell;
    89-cv-00859 (D. Conn.) ..............................................................................20

K.H ex rel Murphy v. Morgan,
    914 F.2d 846 (7th Cir. 1990) .......................................................................24

Kenny A. v. Purdue,
    02-cv-01686 (N.D. Ga. Oct. 28, 2005) .........................................................20

Kenny A. v. Purdue,
    218 F.R.D. 277 (N.D. Ga. 2003) .................................................................35

Kontrick v. Ryan,
    540 U.S. 443 (2004) ..................................................................................15

L.J. ex rel. Darr v. Massinga,
    699 F. Supp. 508 (D. Md. 1988) ............................................................passim

L.J. ex rel. Darr v. Massinga,
    838 F.2d 118 (4th Cir. 1988) .................................................................passim

L.J. v. Massinga,
    778 F. Supp. 253 (D. Md. 1991) ...................................................................6

Lubben v. Selective Serv. Sys. Local Bd. No. 27,
    453 F.2d 645 (1st Cir. 1972) .........................................................................9

M.E. v. Martinez,
    90-cv-01008 (S.D. Fla. Sept. 26, 2001) ........................................................20

Marisol A. v. Giuliani,
    929 F. Supp. 662 (S.D.N.Y. 1996) ..............................................................35

Marisol A. v. Giuliani,
    95-cv-10533 (S.D.N.Y. Jan. 2, 1999) ...........................................................20

Mark A. v. Wilson,
    98-cv-00041 (E.D. Cal. Nov. 2, 1999) ..........................................................20

McCormick v. Sullivant,
    23 U.S. 192 (1825) ....................................................................................13

McLawhorn v. John W. Daniel & Co.,
     924 F.2d 535 (4th Cir.1991) .........................................................................39

Meador v. Ky. Cabinet for Human Res.,
     902 F.2d 474 (6th Cir. 1990.........................................................................24

Milburn v. Anne Arundel County Dept. of Soc. Servs.,
     871 F.2d 474 (4th Cir. 1989) .......................................................................26

Missouri Child Care Assoc'n v. Martin,
     241 F. Supp .2d 1032 (W.D. Mo. 2003) .....................................................35

Nash County Bd. of Educ. v. Biltmore Co.,
     640 F.2d 484 (4th Cir. 1981) .......................................................................18

Nat'l Org. for Women v. Operation Rescue,
     47 F.3d 667 (4th Cir. 1995) .........................................................................39

Nemaizer v. Baker,
     793 F.2d 58 (2d Cir. 1986)...........................................................................14

Newman-Green, Inc. v. Alfonzo-Larrain,
     490 U.S. 826 (1989).....................................................................................18

Nicini v. Morra,
     212 F.3d 798 (3d Cir. 2000).........................................................................24

Norfleet v. Ark. Dep. of Human Servs.,
     989 F.2d 289 (8th Cir. 1993) .......................................................................24

Norman v. McDonald,
     89-cv-01624 (N.D. Ill.) ................................................................................20

Norman v. McDonald,
     930 F. Supp. 1219 (N.D. Ill. 1996) .............................................................20

Northwest Airlines, Inc. v. County of Kent,
     510 U.S. 355 (1994).....................................................................................12

O'Sullivan v. City of Chicago,
     396 F.3d 843 (7th Cir. 2005) ................................................................passim

Occean v. Kearney,
     123 F. Supp. 2d 618 (S.D. Fla. 2000) .........................................................35

Off. of Child Adv. v. Rossi,
     86-cv-00723 (D.R.I.)....................................................................................20

Off. of Child Advocate v. Lindgren,
    296 F. Supp. 2d 178 (D.R.I. 2004)..................................................................passim

Olivia Y. v. Barbour,
04-cv-00251 (S.D. Miss. Jan. 4, 2008) ..................................................................20

Olivia Y. v. Barbour,
    351 F. Supp. 2d 543 (S.D. Miss. 2004)..........................................................25

Patten v. Nichols,
    274 F.3d 829 (4th Cir. 2001) ..........................................................................passim

Pee Dee Health Care v.  Sanford,
    509 F.3d 204 (4th Cir. 2007) ..........................................................................36

Picco v. Global Marine Drilling Co.,
    900 F.2d 846 (5th Cir.1990) ............................................................................14

R.C. v. Wally,
    88-cv-0ll70 (M.D. Ala.)....................................................................................20

Roe v. Ohio Dept. of Human Servs.,
    83-cv-01704 (S.D. Ohio) ..................................................................................20

Rufo v. Inmates of Suffolk County Jail,
    502 U.S. 367 (1992)..........................................................................................passim

Schwartz v. United States,
    976 F.2d 213 (4th Cir. 1992) ..........................................................................9

Smith v. D.C.,
    413 F.3d 86 (D.C. Cir. 2005)..........................................................................24

Steel Co. v. Citizens for Better Environment,
    523 U.S. 83 (1998)............................................................................................11

Stoll v. Gottlieb,
    305 U.S. 165 (1938)..........................................................................................14

Suter v. Artist M.,
    503 U.S. 347 (1992)..........................................................................................passim

Swift & Co. v. United States,
    276 U.S. 311 (1928)..........................................................................................15

Taylor ex rel. Walker v. Ledbetter,
    818 F.2d 791 (11th Cir. 1987) ........................................................................23, 24

Timmy S. v. Ky. Cabinet for Human Res.,
  Nos. 92-6485, 92-6486, 1993 WL 492305 (6th Cir. Nov. 29, 1993) .............................20

Timmy S. v. Stumbo,
  916 F.2d 312 (6th Cir. 1990) .......................................................................35

Travelers Indem. Co. v. Bailey,
  ___ U.S. ___, 129 S. Ct. 2195 (2009)...........................................................14

United States v. Krilich,
  152 F. Supp. 2d 983 (N.D. Ill. 2001) ...........................................................9

Va. Off. of Protection and Advocacy v. Va. Dept. of Educ.,
  262 F. Supp. 2d 648 (E.D. Va. 2003) ...........................................................13

Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.,
  535 U.S. 635 (2002)..................................................................................12

W. Radio Servs. Co. v. Qwest Corp.,
  530 F.3d 1186 (9th Cir. 2008) ....................................................................12

Weatherford ex rel. Michael L. v. State,
  81 P.3d 320 (Ariz. 2003)...........................................................................25

Weller v. Balt. Dept. of Soc. Servs.,
  901 F.2d 387 (4th Cir. 1990) ......................................................................26

Wendt v. Leonard,
  431 F.3d 410 (4th Cir. 2005) ......................................................................9

White v. Chambliss,
  112 F.3d 731 (4th Cir. 1997) ...............................................................passim

Wildauer v. Frederick County,
  993 F.2d 369 (4th Cir.1993) .......................................................................30

Wilder v. Va. Hosp. Ass'n,
  496 U.S. 498 (1990)..................................................................................13

Youngberg v. Romeo,
  457 U.S. 307 (1982)..........................................................................passim

Yvonne L. v. N.M..Dept. of Human Servs.,
  959 F.2d 883 (10th Cir. 1992) .............................................................23, 24

## Statutes, Regulations, and Rules

1994 Acts, Section 555(b),
    Pub.L. 103-38, <u>codified</u> <u>at</u> 42 U.S.C. §§ 1320a-2 & 1320a-10 ......................................31

Adoption Assistance and Child Welfare Act of ...................................................................passim

Pub. L. 103-432, Title II, §§ 202(a), (c), (e),
    108 Stat. 4453-54 (1994) ......................................................................27

28 U.S.C. § 1331 ..................................................................................................11

28 U.S.C. § 1343(4) .............................................................................................11

42 U.S.C. § 1983 ..................................................................................................28

42 U.S.C § 622(b)(8)(A) ......................................................................................

42 U.S.C. § 622(b)(8)(A)(ii) ...............................................................................27

42 U.S.C. § 622(b)(15)(A)(i) ..............................................................................46

42 U.S.C. § 671(a)(1) ..........................................................................................27

42 U.S.C. § 671(a)(3) ..........................................................................................27

42 U.S.C. § 671(a)(4) ..........................................................................................27

42 U.S.C. § 671(a)(9) ..........................................................................................28

42 U.S.C. § 671(a)(10) ...................................................................................passim

42 U.S.C. § 671(a)(15) ...................................................................................passim

42 U.S.C. § 671(a)(16) ...................................................................................passim

42 U.S.C. § 672(c) ...............................................................................................28

42 U.S.C. § 674(a)(9) ..........................................................................................28

42 U.S.C. § 675(1) .........................................................................................passim

42 U.S.C. § 675(1)(G)(ii)(II) ..............................................................................46

42 U.S.C. § 675(5) .........................................................................................passim

45 C.F.R. § 1356.21(g) ........................................................................................

Fed. R. Civ. P. 12(b)(6) .......................................................................................

Fed. R. Civ. P. 60(b)(4) ..................................................................................passim

Fed. R. Civ. P. 60(b)(5)............................................................................................passim

Fed. R. Civ. P. 60(c)(1)............................................................................................2

**Legislative Materials**

138 Cong. Rec. S17689-01
    1992 WL 27940 ...................................................................................................32

139 Cong. Rec. S3282-01,
    1993 WL 78347 (Cong. Rec. Mar. 19, 1993) ................................................32

1992 H. Rep. No. 103-7, H.R. 103-7 (Feb. 2, 1993) .............................................32

H.R. Conf. Rep. 6,
    140 Cong. Rec. H10009-01 1994 WL 534741 *926 (Sept. 28, 1994) ............................32

H.R. Conf. Rep. 102-1034,
    1992 WL 321349 .................................................................................................32

Implication of Supreme Court Decision in Suter v. Artist M.: Hearing on H.R. 11 before the
    Senate Finance Subcomm. on Social Security and Family Policy, 102nd Cong. 7 (1992),
    available at 138 Cong. Rec. S17689-01, 7-8 (1992)........................................32

Rep. on Legislative Activity during the 103d Cong. of the Comm. on Ways and Means, H. Rep.
    No. 103-875, 1994 WL 714562 *58 (Dec. 20, 1994). .....................................32

**Treatise**

11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
    Federal Practice and Procedure § 2863 (2d ed. 1995) ....................................................10

## MEMORANDUM IN OPPOSITION TO
## DEFENDANTS' MOTION TO VACATE

Plaintiffs L.J., et al., by their undersigned counsel, respectfully oppose the Defendants' Motion to Vacate Decree and in Opposition to Entry of Proposed Decree and respond to Defendants' Memorandum in Support ("Defs. Mem."). Defendants' motion does not ask this Court to conduct the balancing of equities discussed in Horne v. Flores, it does not show any change in the substantive law with which Defendants must comply, and it does not even argue that the Defendants are in compliance with federal law. Instead, Defendants ask the Court to vacate its longstanding and final consent order for a purported lack of subject matter jurisdiction, based on precedent that is more than seventeen years old. Defendants' motion is both untimely and incorrect, as it is far too late to challenge the Court's subject matter jurisdiction over the final judgment entered in this matter years ago. In any event, the Court had and retains subject matter jurisdiction. The Court should deny the Motion and enter the Modified Consent Decree.

## OVERVIEW

Defendants bring this motion after twenty-one years of inconsistent and insufficient compliance with the Consent Decree entered by this Court in 1988, after three years of protracted negotiations, which resulted in a proposed Modified Consent Decree that even the Governor has hailed as an important breakthrough that should result in a stronger child welfare system, and after filing a Joint Motion for Approval of Modified Consent Decree ("Joint Motion"). Defendants assert that their sudden *volte face* – and opposition to a consent order that they themselves negotiated – is based upon the Supreme Court's recent decision in Horne. v. Flores, __ U.S. __, 129 S. Ct. 2579 (2009). This, however, is not correct. Horne did not address subject matter jurisdiction, but instead held that a Court must consider whether it is equitable to enforce

an injunction and declaratory judgment under Fed. R. Civ. P. 60(b)(5) if defendants have reached *compliance* with the underlying federal law through means not envisioned in the injunction. Defendants do not address any of the considerations in <u>Horne</u>, they do not present any means used by them to comply with federal law, and they do not even *claim* to be in compliance with either the Consent Decree or the underlying federal law on which the Consent Decree is based.

Instead of asking the Court to perform the analysis in <u>Horne</u>, Defendants ask the Court to vacate the Consent Decree for lack of subject matter jurisdiction, based upon <u>Suter v. Artist M.</u>, 503 U.S. 347 (1992), a case that was decided seventeen years ago. Defendants do not explain why they have chosen to bring this motion now, as opposed to at any time during the past decade. <u>Horne</u> provides no excuse for Defendants' extraordinary delay, and there has been no recent change in law that could justify relief under Rule 60(b)(5). Defendants' Motion should be denied for each of the following reasons:

1. The Motion is untimely. Defendants' seventeen-year delay in bringing the Motion violates Fed. R. Civ. P. 60(c)(1), which requires motions brought under Rule 60(b) to be filed "within a reasonable" time after the event (here, an alleged change in law) has occurred.

2. <u>Horne</u> provides no basis upon which to vacate the Consent Order in this case. Defendants do not assert that they are in compliance with requirements of the Adoption Assistance and Child Welfare Act of 1980 ("AACWA"), or that they have corrected the ongoing due process violations upon which this action was based, and therefore do not present a ground for Rule 60(b)(5) relief under the standards articulated in <u>Horne</u>.

3. The jurisdictional issues in this case were settled long ago, in a final judgment. In the Consent Decree, this Court found that it had jurisdiction, as the Fourth Circuit had found

earlier on appeal of the preliminary injunction in this case. The Consent Decree is a final judgment, and Defendants cannot mount a collateral attack on a final judgment based upon a purported lack of subject matter jurisdiction. As held by the Supreme Court in cases dating back to 1825, such a collateral attack is barred by res judicata.

4.     Defendants' Motion is not properly brought under Rule 60(b)(5). A Motion to vacate a judgment as void must be brought under Rule 60(b)(4), not Rule 65(b)(5). Rule 60(b)(4) permits such collateral attacks only in "rare" circumstances not present in this case.

5.     This Court has subject matter jurisdiction. While it is not necessary for the Court to address this issue, subject matter jurisdiction plainly exists for three reasons:

     a.     First, even if Defendants were correct and there were no private cause of action following Suter, the Supreme Court has made it plain that, where the underlying claim is based upon non-compliance with federal law, the question of whether a federal law creates a private cause of action is not a matter of subject matter jurisdiction.

     b.     Second, even if there were no private cause of action under the AACWA, the Court plainly has subject matter jurisdiction over this case because Plaintiffs' claims are also based upon Defendants' violation of Plaintiffs' constitutional substantive due process rights resulting from Defendants' denial of adequate care, protection and treatment while Plaintiffs are in the State's custody. This Court has found that those claims were legally viable in a ruling that has never been reversed or overruled by the Fourth Circuit. Federal courts indisputably have subject matter jurisdiction to redress violations of the Due Process Clause of the Constitution.

     c.     Defendants are *not* correct when they claim that Plaintiffs have no cause of action under the AACWA. This argument by Defendants fails because: (a) the Fourth Circuit

expressly held *in this case* that Plaintiffs do have such rights; (2) the Supreme Court's decision in Suter did not address AACWA provisions relied upon by the Fourth Circuit in affirming Plaintiffs' claims; (3) following the Suter decision, Congress enacted a law (the "Suter Fix") to assure "that individuals who have been injured by a State's failure to comply with the Federal mandates of the State plan titles of the Social Security Act are able to seek redress in the federal courts to the extent they were able to prior to the decision in Suter v. Artist M."; (4) the Fourth Circuit's subsequent decision in White v. Chambliss addressed only one of the AACWA provisions relied upon by the Fourth Circuit in this case; and (5) numerous courts have held that these AACWA violations are judicially enforceable.

6.      Even if a material change in the law had occurred, and a proper motion under Rule 60(b)(5) had been filed, Defendants present no basis to justify any modification of the Consent Decree under Rule 60(b)(5).  Had a proper motion been filed, raising the proper considerations, it would fall within the Court's equitable discretion to determine whether, under a "flexible" balancing test, continued enforcement is detrimental to the "public interest." Defendants do not assert any "equitable" considerations to show that continued enforcement by the Court is detrimental to the public interest, as required by Horne and Rufo; they make *no* argument that continued federal jurisdiction is not "equitable"; they do not assert that they are in compliance with federal law – the operative fact in Horne; and they do not demonstrate that the Modified Consent Decree violates principles of federalism.  The Modified Consent Decree was carefully tailored to address federalism concerns, and Defendants actually do not oppose entry of the Modified Consent Decree if the Court finds it has jurisdiction.  In fact, Defendants claim that they *want* the new decree to be entered and announced to the Court they will take the required

steps regardless of the outcome of the Motion. Simply put, Defendants present no basis upon which the Consent Decree could be equitably vacated under Rule 60(b)(5).

Each of these reasons warrants denial of the Motion.

## BACKGROUND HISTORY

In 1980, Congress decided that federal oversight was needed over this country's foster care system and enacted AACWA. One reform required that children placed into State custody be accorded timely due process hearings in juvenile or family courts (the current "Child in Need of Assistance" system in Maryland). After the law took final effect in 1983, counsel, principally at the Legal Aid Bureau, Inc., were appointed to represent the foster children, many of whom had languished in foster care for years. In some cases, the circumstances were shocking: e.g., ignoring repeated reports of severe abuse, psychological torment, and alcoholic abuse (L.J., Am. Compl. ¶¶ 65-119) and knowingly failing to obtain medical treatment needed by a child to prevent blindness in an eye or to remove the child from her severely alcoholic foster parent for eight years after having determined that removal was necessary (P.G., id. ¶¶ 205-25). Plaintiffs filed suit in December 1984, alleging that Defendants' policies and practices violated due process and various AACWA provisions regarding standards for foster homes, case plans, case review systems, abuse and neglect reports and investigation.

In February 1987, after a random sampling of case records confirmed widespread violations, Plaintiffs moved for a preliminary injunction. A two week trial was held, and, on July 27, 1987, the Court entered a preliminary injunction finding, inter alia, that Plaintiffs' statutory and constitutional claims were legally viable and likely to succeed on the merits. The decision eventually was appended to the Court's reported decision approving the Consent Decree, which

was published as <u>L.J. ex rel. Darr v. Massinga</u>, 699 F. Supp. 508 (D. Md. 1988) ("<u>L.J. I</u>"). Defendants appealed, and, on February 1, 1988, the Fourth Circuit affirmed. <u>L.J. ex rel. Darr v. Massinga</u>, 838 F.2d 118 (4th Cir. 1988) ("<u>L.J. II</u>"). In <u>L.J. II</u>, the Fourth Circuit held that Plaintiffs had rights under AACWA to sue Defendants for violations including the requirements for case plans, case reviews, and abuse and neglect reporting. <u>See id.</u> at 123-24 & n.3. Although the Fourth Circuit did not find it necessary to reach Plaintiffs' constitutional claims due to the strength of the statutory claims, it noted that Defendants had offered little defense and that the claims appeared to have a "solid" foundation. <u>Id.</u> at 122.

Following the Fourth Circuit decision, the parties entered into the Consent Decree, which was approved by the Court on September 27, 1988, effective August 6, 1988. In 1991, the parties reached an agreement on the one issue that had been left open for further resolution: alleged violations of the rights of children in Defendants' custody who are placed with relatives ("kinship care"). This agreement (the "Modification") extended the Consent Decree protections to children in kinship care. <u>See L.J. v. Massinga</u>, 778 F. Supp. 253 (D. Md. 1991) ("<u>L.J. III</u>").

Defendants have filed forty-two periodic six-month compliance reports with the Court since the Decree was entered. Not one report questioned subject matter jurisdiction.

Defendants have yet to comply with the Consent Decree, as demonstrated in numerous reports filed by Plaintiffs detailing chronic and persistent non-compliance with many provisions. In 2006, at Defendants' request, the parties attempted mediation, but without success. Plaintiffs petitioned for contempt in November 2007, and Defendants objected in March 2008. At the September 2008 contempt hearing, the parties agreed to renew the mediated negotiations, which succeeded and resulted in the proposed Modified Consent Decree.

**ARGUMENT**

I.      **The *Horne* Decision Does Not Apply to Defendants' Motion.**

The premise of Defendants' Motion, that the <u>Horne</u> decision divested this Court of jurisdiction of this twenty-five year old case, is wrong.   <u>Horne</u> does not address the jurisdictional issue and instead resolves a question that is not presented here: what should happen when defendants comply with the federal law underlying a judicial decree but not the decree itself? Because <u>Horne</u> is not relevant to the issue raised by Defendants, and because the issue that Defendants do raise is not addressed by <u>Horne</u>, the Motion does not assert any recent change in law that could require relief under Fed. R. Civ. P. 60(b)(5).[1]

A.      ***Horne* does not pertain to subject matter jurisdiction.**

Defendants' argument rests upon a fundamental misreading of the <u>Horne</u> decision. <u>Horne</u> addressed only the question of whether it is *equitable* to continue to enforce an injunction under Rule 60(b)(5) when the Defendants have reached compliance with the federal law at issue. <u>See</u> <u>Horne</u>, 129 S. Ct. at 2589 ("[P]etitioners argue that Arizona is now fulfilling its statutory obligation by new means that reflect new policy insights and other changed circumstances.  Rule 60(b)(5) provides the vehicle for petitioners to bring such an argument."), 2606 (holding that if school district proves that it "is no longer in violation of the [Equal Educational Opportunities Act] and, to the contrary, is taking "appropriate action" to remove language barriers in its schools …. continued enforcement of the District Court's original order is inequitable within the meaning of Rule 60(b)(5), and relief is warranted").

---

[1]  Fed. R. Civ. P. 65(b) states in pertinent part: "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: ... (4) the judgment is void; [and] (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or vacated, or applying it prospectively is no longer equitable[.]"

Subject matter jurisdiction was not at issue in <u>Horne</u>. Rather, the only substantive issue was whether compliance with federal law would obviate the need for an injunction. <u>See</u> <u>Horne</u>, 129 S. Ct. at 2595 (stating that "a critical question in this Rule 60(b)(5) inquiry is whether the objective of the District Court's declaratory judgment order … has been achieved").

Here, Defendants *do not* assert that they are in compliance with any of the federal statutes at issue, either the laws in effect at the time of the original complaint or current federal law, much less the Constitution. Thus, this Motion has nothing to do with the <u>Horne</u> situation.

Instead, the issue presented here is whether the Court has jurisdiction over the Consent Decree and authority to enter the new Decree, not the Court's equitable authority under Rule 60(b)(5). <u>See</u> Defs. Mem. at 1 ("the Court lacks subject matter jurisdiction to enforce the decree's provisions"); <u>see</u> <u>also</u> Ex. 1, 8/5/09 Hr'g Tr. at 3 (statement by the Court that "the Attorney General's Office wrote to me saying that in their view, the <u>Flores</u> case deprives me of subject matter jurisdiction over the case. So, therefore, I can't approve the decree."). Defendants make no specific "equitable" argument discussing the 60(b)(5) factors and instead insist that the Court must vacate the Consent Decree for want of jurisdiction. <u>Horne</u> does not address this issue and thus does not apply. Plaintiffs know of no other case in which defendants have moved for Rule 60(b)(5) relief applying <u>Horne</u> in this fashion.[2]

### B. Defendant's Motion properly falls under Fed. R. Civ. P. 60(b)(4) not Fed. R. Civ. P. 60(b)(5) as in *Horne*.

To try to shoehorn this case into <u>Horne</u>, Defendants erroneously bring it under Fed. R. Civ. P. 60(b)(5). It is, in fact, a Fed. R. Civ. P. 60(b)(4) motion challenging the Consent Decree

---

[2] Defendants in the D.D.C. foster care class action, <u>LaShawn A. v. Fenty</u>, 89-cv-01754, have raised a <u>Horne</u> issue, but not on jurisdictional grounds. Their motion cited <u>Horne</u> as an additional basis for the district court to vacate the consent decree in a pending Rule 60(b)(5) motion alleging compliance. It was argued on July 20, 2009.

judgment as void for lack of subject matter jurisdiction. See, e.g., Eberhardt v. Integrated Design & Const., Inc., 167 F.3d 861, 871 (4th Cir. 1999) ("a judgment is void … if the court that rendered it lacked jurisdiction of the subject matter") (quoting, inter alia, Schwartz v. United States, 976 F.2d 213, 217 (4th Cir. 1992); United States v. Krilich, 152 F. Supp. 2d 983, 991 (N.D. Ill. 2001) (a judgment "is void if it is without subject matter jurisdiction"). Indeed, Rule 60(b)(5) does not apply to subject matter jurisdiction, as the Rule provides only equitable discretionary relief, and subject matter jurisdiction is not discretionary. The Court either has it or it does not, in which case the judgment is void.

This distinction is significant. Rule 60(b)(4) may be used for collateral attack only in rare circumstances. See Wendt v. Leonard, 431 F.3d 410, 413 (4th Cir. 2005) ("Thus, when deciding whether an order is 'void' under Rule 60(b)(4) for lack of subject matter jurisdiction, courts must look for the 'rare instance of a clear usurpation of power.'"). A court "plainly usurps jurisdiction only when there is a 'total want of jurisdiction' and no arguable basis on which it could have rested a finding that it had jurisdiction." Id. (citations omitted). The Fourth Circuit emphasizes the extreme difficulty of such a motion: "Mere error in the exercise of jurisdiction will not render a prior judgment invalid. 'A court has the power to determine its own jurisdiction and an error in that determination will not render the judgment void. *Only in the rare instance of a clear usurpation of power will a judgment be rendered void.*'" Cooper v. Productive Transp. Servs., Inc. (In re Bulldog Trucking, Inc.), 147 F.3d 347, 352 (4th Cir. 1998) (emphasis added) (quoting Lubben v. Selective Serv. Sys. Local Bd. No. 27, 453 F.2d 645, 649 (1st Cir. 1972)).

Rule 60(b)(5), by contrast, can be used for collateral attack on a judgment *only* in the narrow circumstance when "a prior judgment upon which it is based has been reversed or

vacated[.]" This refers to issue preclusion or res judicata; a change in precedential law does not

suffice. See, e.g., Krilich, 152 F. Supp. 2d at 994 (citing 11 Charles Alan Wright, Arthur R.

Miller & Mary Kay Kane, Federal Practice and Procedure § 2863 at 335 (2d ed. 1995); Agostini

v. Felton, 521 U.S. 203, 239 (1997)); Lubben, 453 F.2d at 650. No such event has occurred here.

The other prong of Rule 60(b)(5), allowing relief when it no longer is equitable to apply a

judgment prospectively, is discretionary and thus does not apply to subject matter jurisdiction.

Defendants' subject matter jurisdiction challenge must be brought under Rule 60(b)(4), which

allows relief only in "rare" case where jurisdiction is not even colorable. See, e.g., Basel v.

Bielaczyz, No. 74-40135-BC, 2009 WL 2843906, at *3-4 (E.D. Mich. Sept. 1, 2009) (holding

that even if the federal regulations cited in a consent decree were not enforceable under 28

U.S.C. § 1983, as long as plaintiffs had alleged a violation of federal law in its complaint, that

allegation was sufficient to defeat a Rule 60(b)(4) challenge to continued jurisdiction); Off. of

Child Advocate v. Lindgren, 296 F. Supp. 2d 178, 184-85 (D.R.I. 2004) (applying Rule 60(b)(4)

and denying jurisdictional challenge to foster care consent decree).

Horne, of course, was not brought under Rule 60(b)(4), as subject matter jurisdiction was

not at issue. That fact alone makes Horne inapplicable here.

## II.     This Court Has Subject Matter Jurisdiction of the Consent Decree.

In addition to relying upon the inapt Horne decision, Defendants' Motion also fails in its

substantive argument of a purported lack of subject matter jurisdiction. First, the issue of

whether Plaintiffs have federal rights actionable under 28 U.S.C. § 1983 does not implicate

subject matter jurisdiction: the Supreme Court has repeatedly held that such issues go to the

merits and not whether the claim raises a federal question that the Court has jurisdiction to

consider. Second, the Court already has found subject matter jurisdiction, both when it affirmed the viability of Plaintiffs' federal claims in L.J. I (affirmed on appeal), and when it entered the Consent Decree, which includes an express finding of subject matter jurisdiction. As the Consent Decree constitutes a final judgment, Defendants are barred by res judicata from relitigating jurisdiction again, twenty-one years later. Finally, as discussed in Part III, infra, Defendants' argument fails on the merits. Plaintiffs brought valid federal claims sufficient to establish and retain subject matter jurisdiction by any standard.

> **A. Defendants incorrectly treat the alleged lack of a private cause of action as a matter of subject matter jurisdiction.**

Defendants erroneously assume that the issue of whether the Plaintiffs have enforceable federal rights constitutes a question of subject matter jurisdiction. While some courts conflate the issues, subject matter jurisdiction for § 1983 is established by 28 U.S.C. §§ 1331 (federal question) and 1343(4) (statutory claims for equitable relief for protecting civil rights), neither of which require Plaintiffs to demonstrate valid claims on the merits to establish jurisdiction.

Since 1946, the test has been whether a "colorable" claim exists under federal law. Unless the § 1983 claim is "'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous[,]'" jurisdiction exists. Arbaugh v. Y & H Corp., 546 U.S. 500, 513 n.10 (2006) (quoting Bell v. Hood, 327 U.S. 678, 682-83 (1946)). Plaintiffs' § 1983 claims easily met this test. The statutory claims clearly were colorable: they were affirmed by the Fourth Circuit in L.J. II. The constitutional claims were even stronger: they were affirmed by this Court in L.J. I and have been recognized by nearly every federal Circuit.

Since the Bell decision, numerous Supreme Court cases have distinguished between the existence of a private cause of action and subject matter jurisdiction. See, e.g., Steel Co. v.

Citizens for Better Environment, 523 U.S. 83, 89 (1998) ("It is firmly established … that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the courts' statutory or constitutional power to adjudicate the case.") (emphasis omitted); Northwest Airlines, Inc. v. County of Kent, 510 U.S. 355, 365 (1994) ("[t]he question whether a federal statute creates a claim for relief is not jurisdictional").  The Supreme Court recently addressed this question in Verizon Md. Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635 (2002), in which the PSC argued a lack of subject matter jurisdiction because the federal statute at issue did not confer a private cause of action.  The Court concluded that, so long as the claim was *colorably* based on the federal statute, it "thus falls within 28 U.S.C. § 1331's general grant of [federal question] jurisdiction" and the federal courts had jurisdiction.  Id. at 642-43 (emphasis added); see also W. Radio Servs. Co. v. Qwest Corp., 530 F.3d 1186, 1194 (9th Cir. 2008) (existence of right of action is not jurisdictional, and "[b]ecause the availability of relief turns on interpretation of a federal statute, we clearly have general federal question jurisdiction").

Indeed, the Eighth Circuit reached the same conclusion regarding a similar challenge to a court's subject matter jurisdiction to approve a foster care consent decree based on AACWA and constitutional claims.  See Angela R. by Hesselbein v. Clinton, 999 F.2d 320, 323 (8th Cir. 1993) ("Plaintiffs commenced this action to compel the State to comply with federal statutes and the Constitution in dealing with foster children and abused or neglected children.  There can be no doubt that the district court had jurisdiction to consider these claims.")  The court rejected Defendants' challenge to jurisdiction because "these questions go to the merits of plaintiffs' claims, not to the district court's jurisdiction[,]" and "Suter [v. Artist M.] does not 'inescapably render the claims frivolous.'"  Id. at 324 (citation omitted).  The distinction between valid claims

and subject matter jurisdiction is well-recognized.  See, e.g., Basel, 2009 WL 2843906, at *4 ("While the magistrate judge concluded that the federal regulations cited in the consent judgment were not enforceable under § 1983, that does not justify the conclusion that the Court lacked subject matter jurisdiction."); Va. Off. of Protection and Advocacy v. Va. Dept. of Educ., 262 F. Supp. 2d 648, 656-58 (E.D. Va. 2003) (finding subject matter jurisdiction despite lack of enforceable rights under the IDEA).[3]

Nevertheless, despite the black-letter rule established by Bell, some courts continue to conflate the two concepts, but this is wrong per the Supreme Court, which criticizes such rulings as "'drive-by jurisdictional rulings' that should be accorded 'no precedential effect' on the question of whether the federal court had the authority to adjudicate the claim in suit." Arbaugh, 546 U.S. at 511 (quoting Steel Co., 523 U.S. at 91).  Under settled Supreme Court precedent, the viability of a private right of action goes to the merits, not subject matter jurisdiction.

**B.      Even if Defendants did present a colorable challenge to subject matter jurisdiction, their defense is barred by res judicata.**

Subject matter jurisdiction is subject to the rules of res judicata: since 1825, the law has been clear that final judgments finding jurisdiction are binding on the parties, particularly when the issue was considered and found by the district court.  See McCormick v. Sullivant, 23 U.S. 192, 199-200 (1825).  This is true even where a subsequent change in the law allegedly divests the court of jurisdiction.  See Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371

---

[3]  Defendants' own authorities make this clear, as the cited Supreme Court cases establishing the tests for a private cause of action do not mention subject matter jurisdiction.  See Gonzaga Univ. v. Doe, 536 U.S. 273 (2002); Blessing v. Freestone, 520 U.S. 329 (1997); Suter v. Artist M., 503 U.S. 347 (1992); see also Wilder v. Va. Hosp. Ass'n, 496 U.S. 498 (1990).  Most cases cited by Defendants as finding no private cause of action under AACWA also do not discuss subject matter jurisdiction and instead treat the issue as a failure to state a claim.  See, e.g., Eric L. v. Bird, 848 F. Supp. 303, 306 (D.N.H. 1994).  Defendants cite only two cases in which the issue was presented as subject matter jurisdiction, and those courts accepted jurisdiction on alternate grounds.  See D.G. by Stricklin v. Henry, 594 F. Supp. 2d 1273, 1274, 1281  (N.D. Okla. 2009); Off. of Child Advocate, 296 F. Supp. at 185 n.4.

(1940). In Chicot County, respondents sought relief from a judgment after its statutory basis was held unconstitutional. The Supreme Court ruled that the challenge to subject matter jurisdiction was barred by res judicata, holding that "[t]he court has the authority to pass upon its own jurisdiction and its decree sustaining jurisdiction against attack, while open to direct review, is res judicata in a collateral action." Id. at 377.

This principle is well-settled. The Supreme Court just recently denied a collateral challenge to injunctions that had expressly found and retained subject matter jurisdiction.

> [O]nce the 1986 [injunction] Orders became final on direct review (whether or not proper exercises of bankruptcy court jurisdiction and power), they became res judicata to the "'parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'"

Travelers Indem. Co. v. Bailey, ___ U.S. ___, 129 S. Ct. 2195, 2205 (2009) (citations omitted). The Court added that "[t]hose orders are not any the less preclusive because the attack is on the Bankruptcy Court's conformity with its subject-matter jurisdiction, for '[e]ven subject-matter jurisdiction ... may not be attacked collaterally.'" Id. (quoting Chilcot County). Accord Bulldog Trucking, 147 F.3d at 352; 11 Wright & Miller, supra, § 2862 at 331 ("[A] court's determination that it has jurisdiction of the subject matter is binding on that issue, if the jurisdictional question actually was litigated and decided, or if a party had an opportunity to contest subject matter jurisdiction and failed to do so.").[4]

---

[4] Courts reject efforts to use Rule 60(b) to re-litigate subject matter jurisdiction. See Stoll v. Gottlieb, 305 U.S. 165, 172 (1938) (holding that where a court "has decided the question of the jurisdiction over the parties as a contested issue, the court in which the plea of res judicata is made has not the power to inquire again into that jurisdictional fact"); Nemaizer v. Baker, 793 F.2d 58, 64-66 (2d Cir. 1986) (rejecting effort to void judgment under Rule 60(b)(4) where the complaining parties raise the issue prior to final judgment and thus "are now barred by principles of res judicata and the interest in finality of judgments from mounting a collateral attack"); Picco v. Global Marine Drilling Co., 900 F.2d 846, 850 (5th Cir.1990) (holding that a court's determination of jurisdiction is subject to res judicata and "generally may not be challenged in a collateral proceeding"; if the party had "the opportunity to raise the jurisdictional issue," it then is "barred from challenging … jurisdiction in a Rule 60(b)(4) proceeding").

This principle extends to consent decrees and consent judgments. See Swift & Co. v. United States, 276 U.S. 311 (1928). In Swift, the Supreme Court held that a consent judgment providing prospective injunctive relief and which declared that the court "had jurisdiction of the … the subject matter" was immune to collateral attack for lack of subject matter jurisdiction:

> T]he objection is one which is not open on a motion to vacate. The court had jurisdiction both of the general subject-matter – enforcement of the Anti-Trust Act – and of the parties. If it erred in deciding that there was a case or controversy, the error is one which could have been corrected only by an appeal or by a bill of review. On a motion to vacate, the determination by the Supreme Court of the District that a case or controversy existed is not open to attack."

Id. at 320, 326 (citations omitted). Swift is still good law. See O'Sullivan v. City of Chicago, 396 F.3d 843, 857-58 (7th Cir. 2005) (quoting Swift to apply res judicata to bar motion to void consent decree for lack of jurisdiction, stating that "the Supreme Court and the courts of appeals have refused to permit collateral attacks on the subject matter jurisdiction of the court").

Defendants' sole cited authority saying that subject matter jurisdiction can be raised at any time, even after trial and entry of judgment, the Arbaugh decision, see Defs. Mem. at 15, does not address collateral attack after final judgment deciding the issue. Instead, Arbaugh merely states the black letter rule that subject matter jurisdiction can be raised at any time. See Arbaugh, 546 U.S. at 506-07. Its cited reference, Kontrick v. Ryan, 540 U.S. 443, 455 (2004), makes clear that Defendants miscite this principle. In Kontrick, the Court explained that "any time" refers to any time in the *direct* proceedings – on appeal, in a certiorari petition, or in a Supreme Court brief – and added that this rule does not apply to collateral attacks after direct review was exhausted: "Even subject-matter jurisdiction, however, may not be attacked collaterally." Id. n.9 (citing Des Moines Nav. & R. Co. v. Iowa Homestead Co., 123 U.S. 552 (1887)). Neither Arbaugh nor any other case has reversed 180 years of Supreme Court rulings.

Res judicata allows only rare exceptions for extraordinary situations. See Travelers Indem., 129 S. Ct. at 2206 n.6 ("we have recognized rare situations in which subject-matter jurisdiction is subject to collateral attack"); O'Sullivan, 396 F.3d at 859 ("Our own court has phrased the rule accordingly: 'After a case has become final by exhaustion of all appellate remedies, *only an egregious want of jurisdiction* will allow the judgment to be undone by someone who, having participated in the case, cannot complain that his rights were infringed without his knowledge.'") (emphasis added) (citation omitted); Wendt, 431 F.3d at 412-13 (affirming that "we narrowly construe the concept of a 'void' order under Rule 60(b)(4) precisely because of the threat to finality of judgments" and agreeing that the concept is "is extremely limited" and "*so narrowly restricted that, although seemingly incongruous, a federal court judgment is almost never void because of lack of federal subject matter jurisdiction*") (emphasis added) (citations omitted). "*Only when the jurisdictional error is 'egregious'* will courts treat the judgment as void*.*" Id. (emphasis added).[5]

The Fourth Circuit has identified three "narrow exceptions" to this rule: (1) the exercise of jurisdiction constitutes a manifest abuse of authority, (2) allowing the challenged judgment to stand would substantially encroach upon the authority of another tribunal or agency of government, or (3) the judgment was rendered by a court lacking capability to make an adequately informed determination as to its own jurisdiction. In re Bulldog Trucking, 147 F.3d at 353. In Travelers Indemnity, however, the Supreme Court declined to say whether it would

---

[5] Tellingly, none of Defendants' cited cases addressed res judicata. Their principal case, the plurality opinion by Judge Easterbrook in Evans v. City of Chicago, 10 F.3d 474 (7th Cir. 1993) (en banc), involved *direct appeals* that reversed a lower court finding of a valid constitutional claim, leaving only state statutory interests at issue. (The consent decree was entered before damages were tried, and the Seventh Circuit, on direct review of the damages awarded at trial, held that the plaintiffs had failed to state a claim for any constitutional violations). A subsequent Seventh Circuit decision regarding attorney's fees confirmed that the consent decree in that case was interlocutory and not a final judgment. See Barlak v. City of Chicago, 81 F.3d 658, 663 (7th Cir. 1996).

adopt any of these.  See 129 S. Ct. at 2606 n.6.  Only the second exception even arguably could

apply here, but, per Travelers Indemnity, even this seems impossible: the Court likened this

exception to a bankruptcy court trying a criminal case or resolving a custody dispute, "matters

'so plainly beyond the court's jurisdiction' that a different result might be called for."  Id.

Nothing even remotely close to that is at issue here given Defendants' seventeen years of silence

after Suter before raising the issue.[6]

    To the extent that courts allow consideration of new legal developments, they do so only

in the 60(b)(5) "equitable" enforcement analysis, which involves a balancing of equities and

exercise of judicial discretion regarding the "public interest" that Defendants fail to raise.  See,

e.g., Horne, 129 S. Ct. at 2593 (affirming that movant bears the burden of proving that the

change in law "renders continued enforcement 'detrimental to the public interest'" (quoting

Rufo, 502 U.S. at 384); O'Sullivan, 396 F.3d at 868 (denying challenge to subject matter

jurisdiction over a consent decree due to change in law that affected standing, but remanding for

60(b)(5) equitable balancing: "On remand, … the focus … shall be not on the law of standing as

a jurisdictional concept but on the equitable standards embodied in Rule 60(b)(5).").[7]

    Res judicata applies here.  In its preliminary injunction decision, the Court found a

private cause of action under both the child welfare laws and substantive due process.  See L.J. I,

699 F. Supp. at 539-40.  The Fourth Circuit expressly affirmed the existence of a private cause of

_____

[6] In Bulldog Trucking, Judge Murnaghan stated, "Any improper exercise of jurisdiction necessarily intrudes on the power of another tribunal, but not every such intrusion implicates public concerns that outweigh the countervailing interest in finality."  147 F.3d at 354.  The issue is separation of powers: so long as "the district court's exercise of jurisdiction did not fundamentally disturb the distribution of governmental powers so as to require invalidation of the unappealed judgment challenged here," res judicata should apply.  Id.  Again, it is hard to see any such issue here, especially when Defendants waited for nearly two decades to complain about the Court's jurisdiction.

[7] So too, in Horne, instead of reversing for entry of judgment in favor of defendants, the Supreme Court reversed and remanded for a determination of whether the full range of changed circumstances made it inequitable for the court's decree to be applied prospectively.  129 S. Ct. at 2607.

-17-

action.  See LJ II, 838 F.2d at 123-24.  Defendants petitioned for a writ of certiorari, which was

denied.  488 U.S. 1018 (1989).  Thereafter, the Court entered a final judgment which expressly

found subject matter jurisdiction, both over the case and for subsequent purposes, including

modification.  See Consent Decree ¶ 1 ("This Court has jurisdiction of the subject matter of this

Consent Decree."), reprinted at L.J. I, 699 F. Supp. at 519.  While the Defendants preserved their

right to contest jurisdiction, venue, and other defenses for subsequent *litigation* other than

enforcement, see id., elsewhere they confirm that the Court's jurisdiction extends to

modification.  See id. ¶ 40 ("The parties agree that the Court shall retain jurisdiction over this

case until the terms of this Consent Decree are fully implemented for the purposes of (i) assuring

implementation and (ii) allowing any party to apply at any time for an order seeking

interpretation, implementation, enforcement, or modification of this Decree.").[8]  Finally, in L.J.

III, 778 F. Supp. at 254-60, Defendants did not preserve any question of the Court's jurisdiction.

A consent decree is a final judgment, Rufo v. Inmates of Suffolk County Jail, 502 U.S.

367, 391 (1992), and, as such, is entitled to res judicata.  See Nash County Bd. of Educ. v.

Biltmore Co., 640 F.2d 484, 487 (4th Cir. 1981) (holding that consent judgment "is as conclusive

and final as to any matter determined as one rendered … after contest and trial").  Defendants'

challenge of a twenty-one year old judgment establishing subject matter jurisdiction is barred by

res judicata.  Parties to consent decrees cannot store up jurisdictional challenges for future use

---

[8]  This reservation of rights to contest aspects of jurisdiction in the future is meaningless.  Subject matter jurisdiction is measured by the facts in existence when the complaint was filed and, once in existence, may not be divested by subsequent events.  See Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 830 (1989); Freeport-McMoRan Inc. v. K N Energy, Inc., 498 U.S. 426, 428 (1991).  A change in circumstances, such as a loss of standing or diversity of citizenship, does not divest a court of jurisdiction and cannot be raised under Rule 60(b)(4) after a final judgment has been entered.  See, e.g., Swift, 276 U.S. at 326; Coalition of Black Leadership v. Cianci, 570 F.2d 12, 15 (1st Cir. 1978) (rejecting motion to vacate where defendants asserted that subsequent Supreme Court cases had changed the governing law and deprived plaintiffs of standing: "errors in deciding whether or not a suit presents a case or controversy are not open to attack by a motion to vacate after a [§ 1983] consent decree has been entered.").

decades later, as Defendants do here. Even without considering the merits of their jurisdictional

challenge, it is barred by well-settled principles applied by the Supreme Court in dozens of cases.

III. **Plaintiffs' Complaint Alleged Valid Federal Claims Sufficient to Support Subject Matter Jurisdiction.**

A. **Overview.**

Given the minimal tests that Plaintiffs must pass to sustain subject matter jurisdiction

under a Rule 60(b) challenge, i.e., that the claim is "colorable" (Bell) or that there is at least an

"arguable basis" for jurisdiction (Wendt), Defendants do not come close to demonstrating a lack

of jurisdiction in this case. Plaintiffs' substantive due process claims have been widely if not

universally recognized, and were previously accepted by the Court. Plaintiffs' AACWA claims

were affirmed by the Fourth Circuit and, to the extent they might have been undermined by the

Suter decision, were re-invigorated by the so-called "Suter Fix" legislation. They were valid

when brought and remain valid today. Thus, even if the test here were not so minimal (any

colorable claim, any arguable basis), Plaintiffs have ample grounds for federal jurisdiction.

If Defendants are correct, the federal courts lost the right to enter or enforce orders for

foster children in State custody (or cases involving their families) in 1992, when the Supreme

Court decided Suter (rejecting the statutory causes of action), three years after purportedly

rejecting substantive due process claims in DeShaney v. Winnebago County Dep't of Soc.

Servs., 489 U.S. 189 (1989). But numerous orders granting new class-wide relief in favor of

foster children have been entered by the federal courts since Suter; others, like L.J., remained in

effect notwithstanding Suter and DeShaney; and other similar cases are in litigation after motions

to dismiss were denied by the federal courts.[9]  Each of these cases of federal courts exercising

their powers to protect foster children pursuant to federal constitutional or statutory requirements

is hard evidence that Defendants' legal theory is wrong.

Indeed, after the Suter decision was issued in 1992, several courts addressed the very

issue presented by Defendants here: whether the denial of certain enforceable claims under

AACWA meant that the courts no longer had jurisdiction over the cases.  Those challenges were

defeated in every case known to Plaintiffs.  See, e.g., Angela R., 999 F.3d at 324 (rejecting post-

Suter subject matter challenge to consent decree as claims to enforce AACWA provisions not

addressed in the Suter decision were not "frivolous"); Timmy S. v. Ky. Cabinet for Human Res.,

Nos. 92-6485, 92-6486, 1993 WL 492305, at *4 (6th Cir. Nov. 29, 1993) (denying an attempt to

vacate a continuing foster care injunction under Rule 60(b) for lack of subject matter jurisdiction

following Suter); Norman v. McDonald, 930 F. Supp. 1219, 1228 (N.D. Ill. 1996) (holding that

consent decree could not be vacated where underlying AACWA claims not addressed in Suter

were not "clearly without merit"); Off. of Child Adv., 296 F. Supp. 2d at 185 n.4 (denying

subject matter jurisdiction challenge to consent decree where constitutional claims survived

_____

[9]  Confirmed cases where courts granted class-wide relief since Suter:  ASW v. State of Oregon, 03-cv-06038 (Dist. Or. Oct. 10, 2008); Anderson v. Houstoun, 00-cv-04148 (E.D. Pa. Apr. 1, 2005); Aristotle P. v. Johnson, 88-cv-07919 (N.D. Ill. Mar. 11, 1994); Baby Neal v. Casey, 90-cv-02343 (E.D. Pa. Feb. 1, 1999); Brian A. v. Sundquist, 00-cv-00445 (M.D. Tenn. Jul. 26, 2001); Charlie H. v. Whitman, 99-cv-3678 (D.N.J. Sept. 2, 2003); D.B. v. Granholm, 06-cv-13548 (E.D. Mich. Oct. 24, 2008); David C. v. Leavitt, 93-cv-00206 (D. Utah Aug. 29, 1994); E.C. v. Blunt, 05-cv-00726 (W.D. Mo. Aug. 4, 2006); Emily J. v. Weicker, 93-cv-01944 (D. Conn. Feb. 6, 1997); Eric L. v. Bird, 91-cv-00376 (D.N.H. Jul. 29, 1997); G.L. v. Stangler, 873 F. Supp. 252 (W.D. Mo. 1994); Jeanine B. v. Thompson, 93-cv-00547 (E.D. Wis. Dec. 3, 2002); Kenny A. v. Purdue, 02-cv-01686 (N.D. Ga. Oct. 28, 2005); Mark A. v. Wilson, 98-cv-00041 (E.D. Cal. Nov. 2, 1999); Marisol A. v. Giuliani, 95-cv-10533 (S.D.N.Y. Jan. 2, 1999); M.E. v. Martinez, 90-cv-01008 (S.D. Fla. Sept. 26, 2001); Olivia Y. v. Barbour, 04-cv-00251 (S.D. Miss. Jan. 4, 2008).  Cases that had consent orders that remained in effect despite Suter and DeShaney: Angela R. v. Clinton, 91-cv-0415 (E.D. Ark.); B.H. v. Samuels, 88-cv-05599 (N.D. Ill.); Joseph A. v. N.M. Dept. of Human Servs., 80-cv-00623 (D.N.M.); Juan F. v. Rell, 89-cv-00859 (D. Conn.); Norman v. McDonald, 89-cv-01624 (N.D. Ill.); Off. of Child Adv. v. Rossi, 86-cv-00723 (D.R.I.); R.C. v. Wally, 88-cv-0l170 (M.D. Ala.); Roe v. Ohio Dept. of Human Servs., 83-cv-01704 (S.D. Ohio).  Cases currently in litigation where courts denied motions to dismiss: Clark v. Willden, 06-cv-01068 (D. Nev. Aug. 30, 2006); D.G. v. Henry, 08-cv-00074 (N.D. Okla. Feb. 13, 2008).

impact of <u>Suter</u> and progeny). Defendants cite no case in which <u>Suter</u> has caused a federal court

to terminate an existing foster care decree.

Defendants thus are seeking relief that, apparently, no federal court has provided in any

case similar to <u>L.J.</u> For both the constitutional and the statutory federal grounds for jurisdiction,

Defendants fail to demonstrate that Plaintiffs lack even a colorable basis for their claims.

**B.**    **Substantive due process.**

In the <u>DeShaney</u> decision, the Supreme Court explained the general principle that

individuals involuntarily committed to State custody enjoy a substantive due process right to

care, protection, and treatment:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs – <u>e.g.</u>, food, clothing, shelter, medical care, and reasonable safety – it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause. The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf. In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf -- through incarceration, institutionalization, or other similar restraint of personal liberty – which is the deprivation of liberty triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.

<u>DeShaney</u>, 489 U.S. at 199-200 (footnote and citations omitted). The Supreme Court has found

a substantive due process interest in safe conditions, personal security, and bodily integrity for

pretrial detainees, <u>City of Revere v. Mass. Gen. Hosp.</u>, 463 U.S. 239 (1983); mentally retarded

persons, <u>Youngberg v. Romeo</u>, 457 U.S. 307 (1982); and prisoners, <u>Estelle v. Gamble</u>, 429 U.S.

97 (1976), and in each case the Court found a duty arising from State custody of the individual.[10]

This Court already has determined that Plaintiffs enjoy a substantive due process right to adequate care, protection and treatment resulting from their involuntary removal from their parents' custody, their commitment to State custody by the juvenile court, and their placement into foster care. L.J. I, 699 F. Supp. at 539-40 (affirming legal validity of claim); L.J. II, 838 F.2d at 122 (stating that Defendants made little effort to challenge this Court's finding of a right to substantive due process). This ruling is res judicata for the reasons discussed above.

Defendants, however, largely ignore the substantive due process issue, asserting in a footnote that due process was not a basis for the Consent Decree. See Defs. Mem. at 19 n.13. This contention is difficult to fathom. Defendants cite nothing in support, and the evidence is squarely to the contrary. The class notice (jointly drafted by Plaintiffs and Defendants and approved by the Court) refers to both statutory and constitutional claims. See Ex. 2, Dkt. 197, Notice at 4. Judge Howard's decision approving the Consent Decree states that Plaintiffs "allege that the defendants' administration of the foster care system in Baltimore City violates their rights under … the Fourteenth Amendment to the United States Constitution," L.J. I, 699 F. Supp. at 509, and refers to the preliminary injunction decision to conclude that plaintiffs likely would have prevailed had the case gone to trial. Given this history, Defendants' disregard of substantive due process is a serious omission.[11]

---

[10]    Analogous due process claims have been recognized in this Court and the Fourth Circuit. See Johnson v. Solomon, 484 F. Supp. 278, 299-302 (D. Md. 1979) (holding that children involuntarily committed to mental hospitals enjoy substantive due process rights to treatment and appropriate placement); Patten v. Nichols, 274 F.3d 829, 836-37 (4th Cir. 2001) (right to medical treatment for patient involuntarily committed to psychiatric hospital).

[11]    The existence of a valid substantive due process claim in Plaintiffs' complaint is sufficient to establish subject matter jurisdiction as to the broader consent decree. See Rufo, 502 U.S. at 389-90 ("The position urged by [the defendants] would necessarily imply that the only legally enforceable obligation assumed by the state under the consent decree was that of ultimately achieving minimal constitutional prison standards .... Substantively, this would

Defendants' principal authority, DeShaney, addressed only whether a state child welfare agency had a constitutional duty to protect children who were *not* in state custody and instead were living in their parents' home.  By contrast, L.J. I rested on the fact that the Plaintiffs *are* in state custody, which confers due process rights to care, protection, and treatment.  See L.J. I, 699 F. Supp. at 509-10, 538-539.  DeShaney itself recognizes the distinction:

> Had the State by the affirmative exercise of its power removed Joshua from free society and placed him in a foster home operated by its agents, we might have a situation sufficiently analogous to incarceration or institutionalization to give rise to an affirmative duty to protect.  Indeed, several Courts of Appeals have held, by analogy to Estelle and Youngberg, that the State may be held liable under the Due Process Clause for failing to protect children in foster homes from mistreatment at the hands of their foster parents.  See Doe v. New York City Dept. of Soc. Servs., 649 F.2d 134, 141-42 (2d Cir. 1981), Taylor ex rel. Walker v. Ledbetter, 818 F.2d 791, 794-97 (11th Cir. 1987) (en banc).  We express no view on the validity of this analogy, however, as it is not before us in the present case.

DeShaney, 489 U.S. at 201 n.9.  The Circuits have resoundingly rejected Defendants' view of DeShaney, and held that DeShaney does not bar the application of substantive due process claims of foster children.  See, e.g., Yvonne L. v. N.M. Dept. of Human Servs., 959 F.2d 883, 891-94 (10th Cir. 1992) (discussing DeShaney and affirming that foster children have clearly established constitutional right to protection against risks of harm known by caseworkers).

Defendants cite no case holding that DeShaney precludes a claim of substantive due process brought by children in foster care, and Plaintiffs are not aware of any such case.  Indeed, the Fourth Circuit has rejected this view of DeShaney.  See Patten v. Nichols, 274 F.3d at 837 ("As the Supreme Court explained in DeShaney, these exceptions to the general no-duty-to-act

---

do violence to the obvious intention of the parties that the decretal obligations assumed by the state were not confined to meeting minimal constitutional requirements.") (emphasis omitted); id. at 391 ("*A proposed modification should not strive to rewrite a consent decree so that it conforms to the constitutional floor*.") (emphasis added)); Suter, 503 U.S. at 354 n.6.  ("[P]arties may agree to provisions in a consent decree which exceed the requirements of federal law.").

rule are rooted in the fact the state has custody over the person asserting the claims."); id. at 841

("As discussed above, the Supreme Court in DeShaney made it clear that an exception to the

general no-duty-to-act rule arises only if the state takes an individual into custody; if there is no

custodial relationship, then the state has no duty to protect.").

Every Circuit to consider the issue has affirmed a substantive due process right to care,

protection or treatment for children involuntarily placed in State custody, reasoning that foster

care constitutes a custodial "special relationship" giving rise to a duty of protection.[12]  And the

three that have not said so expressly – the First, Fourth and Ninth Circuits – have applied the

principles in comparable situations.[13]  In Patten v. Nichols, 274 F.3d 829 (4th Cir. 2001), the

---

[12]   See Doe v. N.Y. City Dept. of Soc. Servs., 649 F.2d 134, 141-42 (2d Cir. 1981) (finding constitutional right protection arising from placement of foster child into defendants' custody); Nicini v. Morra, 212 F.3d 798, 808 (3d Cir. 2000) ("We now hold that when the state places a child in state-regulated foster care, the state has entered into a special relationship with that child which imposes upon it certain affirmative duties.  The failure to perform such duties can give rise, under sufficiently culpable circumstances, to liability under section 1983."); Hernandez v. Tex. Dep. of Protective and Reg. Servs., 380 F.3d 872, 880 (5th Cir. 2004) (assuming the existence of such a duty); Meador v. Ky. Cabinet for Human Res., 902 F.2d 474, 476 (6th Cir. 1990) (holding that "due process extends the right to be free from the infliction of unnecessary harm to children in state-regulated foster homes"); K.H ex rel Murphy v. Morgan, 914 F.2d 846, 849 (7th Cir. 1990) ("Once the state assumes custody of a person, it owes him a rudimentary duty of safekeeping no matter how perilous his circumstances when he was free."); Norfleet v. Ark. Dep. of Human Servs., 989 F.2d 289, 293 (8th Cir. 1993) (holding that state owes constitutional duty because in "foster care, a child loses his freedom and ability to make decisions about his own welfare, and must rely on the state to take care of his needs."); Yvonne L., 959 F.2d at 891-94 (discussing DeShaney and affirming that children in foster care have clearly established constitutional right to protection against risks of harm known by caseworkers); Taylor ex rel. Walker v. Ledbetter, 818 F.2d 791, 795 (11th Cir. 1987) (en banc) (explaining that the state has an affirmative duty because foster children are "placed ... in a custodial environment ... [and] unable to seek alternative living arrangements"); Smith v. D.C., 413 F.3d 86, 95 (D.C. Cir. 2005) (" [W]here the government assumes full responsibility for a child by stripping control from the family and placing the child in a government-controlled setting, the government has a duty not to treat the child with deliberate indifference.").

[13]   See Germany v. Vance, 868 F.2d 9, 15 (1st Cir. 1989) (juvenile's right of access to courts); Gary H. v. Hegstrom, 831 F.2d 1430 (9th Cir. 1987) (juvenile detention facility); Hydrick v. Hunter, 466 F.3d 676 (9th Cir. 2006) (sexual treatment facility).  Courts within these Circuits have applied these principles to accord substantive due process protection to foster children.  See, Eric L., 848 F. Supp. at 307 (D.N.H.) (class action concerning foster care conditions) ("This court finds persuasive the principles adopted in other circuits extending Youngberg to the foster care context [and] it appears that … their rights to 'reasonable care and safety' while in foster care [may] have been violated."); Off. of Child Adv., 296 F. Supp. 2d at 181-82 (D.R.I.); Hudson v. City of Salem, No. CV-07-226-ST, 2009 WL 1227770, at *32 (D. Or. May 1, 2009) (holding that, by removing a child from his home, caseworkers "create a special relationship with the child which carries an affirmative obligation to ensure the safety and welfare of the child, including providing adequate medical care"); Braam v. State, 81 P.3d 851, 857 (Wash. 2003) ("foster children have a constitutional substantive due process right to be free from unreasonable risks of harm and a right to

Fourth Circuit confirmed that the Youngberg standard for substantive due process claims, relied upon by the Court in L.J. I, applied, citing the Second and Tenth Circuit foster care decisions in Doe and Yvonne L., respectively, for support. Patten, 274 F.3d at 843. Indeed, many of the cases that Defendants cite to support their statutory arguments *allowed* foster children's constitutional claims[14] -- Defendants' *own* authorities support subject matter jurisdiction here.

The Fourth Circuit has not yet held on this issue (and thus has not overruled L.J. I). Instead, it has twice held, for purposes of determining whether local officials had qualified immunity against damage claims, that there is no "clearly established" precedent in the Fourth Circuit and the Supreme Court deciding those rights of foster children. See White v. Chambliss, 112 F.3d 731, 738 (4th Cir. 1997) ("Given the state of this circuit's law on the issue and the absence of controlling Supreme Court authority, we cannot say that a right to affirmative state protection for children placed in foster care was clearly established at the time of Keena's

---

reasonable safety"); Weatherford ex rel. Michael L. v. State, 81 P.3d 320, 323 (Ariz. 2003) (noting that defendants agreed that a foster child's substantive due process right to reasonable safety was clearly established by 1996).

[14] See Yvonne L., 959 F.2d at 892-93 (finding "a clearly established right to protection while in foster care"); Alger v. County of Albany, 489 F. Supp. 2d 155, 162-63 (N.D.N.Y. 2006) ("Supreme Court and Second Circuit case law clearly establish that '[w]hen individuals are placed in custody or under the care of the government, their governmental custodians are sometimes charged with affirmative duties, the nonfeasance of which may violate the constitution.'"); Olivia Y. v. Barbour, 351 F. Supp. 2d 543, 555-56 (S.D. Miss. 2004) (class action concerning conditions in foster care) ("Defendants do not dispute that the State has a 'special relationship' with the In-Custody Class members that gives rise to a duty to provide 'constitutionally adequate care' and safekeeping."); Off. of Child Adv., 296 F. Supp. 2d at 181-82 (class action concerning conditions in foster care); Daniel H. v. City of New York, 115 F. Supp. 2d 423, 430 (S.D.N.Y. 2000) (applying Doe for the standards for evaluating claims of violations of foster children's substantive due process rights); Charlie H. v. Whitman, 83 F. Supp. 2d 476, 507 (D.N.J. 2000) (class action) ("under the Fourteenth Amendment, the State is required to provide" to foster children their "basic human needs," such as "food, clothing, shelter, medical care, and reasonable safety") (citing DeShaney, 489 U.S. at 200); Eric L. v Bird, 848 F. Supp. at 307 (class action) ("This court finds persuasive the principles adopted in other circuits extending Youngberg to the foster care context" and "it appears that plaintiffs have stated facts sufficient to support a claim that their rights to 'reasonable care and safety' while in foster care have been violated."); Del A. v. Roemer, 777 F. Supp. 1297, 1318 (E.D. La. 1991) (class action) ("[b]ecause the State has established a custodial relationship with plaintiffs, they have a right to adequate food, shelter, clothing, and medical care"); Aristotle P. v. Johnson, 721 F. Supp. 1002, 1009-10 (N.D. Ill. 1989) (class action) (affirming foster children's claim "for the violation of their substantive due process clause" by policies that impaired "their relationships with their siblings") (footnote omitted). Again, these are ***Defendants'*** cases.

death."); <u>Hampton v. Motley</u>, 911 F.2d 722 (Table), 1990 WL 120673 at *2 (4th Cir. Aug. 22, 1990) (per curiam) (holding that "contours" of the constitutional rights of foster children were not yet "clearly established" to overcome qualified immunity).

In three damages cases involving purely private action – abuse by third party foster parents or kinship care providers with no government culpability – the Fourth Circuit has stated that substantive process did not apply. Those decisions reflect the unremarkable fact that neither § 1983 liability nor substantive due process violations occur when harm is caused by private actors and not state agents: no state action is at issue. <u>See White</u>, 112 F.3d at 738 ("'harm suffered by a child at the hands of his foster parents is not harm inflicted by state agents'") (quoting <u>Weller v. Balt. Dept. of Soc. Servs.</u>, 901 F.2d 387, 392 (4th Cir. 1990)); <u>Weller</u>, 901 F.2d at 392 (affirming that state agencies were not liable for private violence simply because they may have "created the situation" by placing the child in a private home and that, "[a]s in <u>DeShaney</u>, the transfer of custody did not make the State 'the permanent guarantor' of Matthew's safety") (quoting <u>DeShaney</u>, 489 U.S. at 201); <u>Milburn v. Anne Arundel County Dept. of Soc. Servs.</u>, 871 F.2d 474, 479 (4th Cir. 1989) (holding that no damages claim could be brought against the State because the foster parents "should not be considered state actors"). Direct DSS culpability was not at issue; instead, the claims sought to hold defendants liable per se as guarantors of the child's safety – the type of claim that <i>is</i> barred by <u>DeShaney</u>. <u>White</u> found that the local DSS had no clear reason to believe that the foster home was abusive and thus did not act unreasonably in failing to remove the child. <u>See White</u>, 112 F.2d at 737.[15] None of

---

[15]  In two cryptic footnotes, Defendants state without explanation that <u>White</u> had held that children in foster care have no substantive due process rights. <u>See</u> Defs. Mem. at 4 n.5, 19 n.13. This is wrong – the holding of <u>White</u> is that foster children's substantive due process right to protection was not clearly established. Apparently, Defendants are referring to an earlier statement in <u>dictum</u> in which, summarizing <u>Milburn</u>, the Fourth Circuit stated that it

the cases address whether substantive due process applies when state action *is* at issue.

In short, Plaintiffs have far more than an "arguable basis" to show subject matter jurisdiction based on their substantive due process claims. Those claims have been recognized by this Court and by every other court in the country addressing the issue during the last three decades. Defendants make no sound argument for a contrary result here.

### C. Federal child welfare statutes.

Defendants' position that the availability of a private cause of action under AACWA was decided by Suter begs the question: why did Defendants wait for seventeen years before they sought relief from this Court based on Suter? The answer is clear: Suter does not dictate the simple outcome that Defendants present. Not only was the Suter holding not as broad as Defendants would have it, but Congress enacted legislation shortly after the Suter decision which, at a minimum, directed that Suter could not be used as a conclusive bar against actions brought to enforce AACWA. The aftermath of Suter makes this clear.

The specifics of the statutory claims are important. Plaintiffs' suit alleged violations of the following current provisions of the Social Security Act as codified by AACWA: 42 U.S.C. §§ 627(a)(2)(B) [now 622(b)(8)(A)];[16] 671(a)(1), (a)(3), (a)(4), (a)(9), (a)(10), (a)(15), and

---

previously had held that foster children had no right to protection. See White, 112 F.3d at 737 ("By 1991, when the events relevant to the instant suit occurred, this circuit had squarely held that children placed in foster care had no federal constitutional right to state protection.") (citing Milburn). But Milburn had no such holding. Instead, it merely held that, because the foster parents were not "state actors" no damages claim could be brought against the State, especially as the child had been placed voluntarily in foster care by the parents – again, there were no culpable "state actors" as required by § 1983. See 871 F.2d at 479. Because it found no state action, Milburn did not address whether children in foster care are entitled to substantive due process rights to protection, care and treatment when state action *is* involved. White's dictum thus merely referred to the "no state action" analysis in Milburn. But if White had believed that Milburn had so held, the dictum would be clearly erroneous and not controlling: the Fourth Circuit plainly never held in Milburn (or Weller) that foster children enjoy no constitutional rights.

[16] AACWA was recodified effective Apr. 1, 1996. (Pub. L. 103-432, Title II, §§ 202(a), (c), (e), 108 Stat. 4453-54 (1994)).

(a)(16); 672(c); 674(a)(9); 675(1); and 675(5).  See Dkt. 15, Am. Compl. ¶¶ 251-61.  In L.J. I, 699 F. Supp. at 538-39, the Court made specific findings that Plaintiffs had colorable claims and were likely to succeed in proving violations of 42 U.S.C. §§ 671(a)(10) (state plans must assure that foster homes comply with professional standards); 675(5)(1) (state plans must assure that each child has a case plan assuring that each child receive proper care and services to improve conditions in the home and address medical and educational needs); and 675)(5) (state plans must assure a case review system to determine the appropriateness of the placement for each child).  The standards in 675(1) and 675(5) were imposed upon the states by § 671(a)(2)(B) [now § 622(b)(8)(A)] and 671(a)(16).

The Fourth Circuit affirmed, relying upon 42 U.S.C. § 627(a)(2)(B) [now § 622(b)(8)(A)(ii)] (requiring that States have a case review system as a condition for federal funding), which was "repeated and amplified in 42 U.S.C. § 671(a)(16), which requires a State's plan to provide for "a case plan ... for each child receiving foster care maintenance payments ... [and] a case review system ... with respect to each such child."  L.J. II, 838 F.2d at 123.  It noted and quoted the "elaborately defined" requirements for case plans and the case review system set forth at 42 U.S.C. §§ 675(1) and (5).  Id. at 123 n.3.  And the Fourth Circuit cited to numerous Supreme Court decisions for its conclusion that these provisions are privately enforceable:

> Taken together we think that these statutory provisions spell out a standard of conduct, and as a corollary rights in plaintiffs, which plaintiffs have alleged have been denied.  It is true that the statutes are largely statutes relating to appropriations, but, defendants' argument to the contrary notwithstanding, they are privately enforceable under 42 U.S.C. § 1983.

Id. at 123.  Defendants petitioned for certiorari, which was denied.  See 488 U.S. 1018 (1989).

Twenty-one years after the Fourth Circuit's ruling in L.J. II and more than seventeen

years after the Supreme Court's decision in <u>Suter</u>, Defendants now insist that the Supreme Court vacated those findings and left this Court with no subject matter jurisdiction. Defendants claim that "[t]hat is the incontrovertible teaching" of <u>Suter</u> and further claim that the decision was "abrogated" by the <u>Suter</u> decision. <u>Id.</u> at 2-3. This is a significant overstatement: the Supreme Court's *only* reference to <u>L.J. II</u> was a footnote noting that the Seventh Circuit had cited it and that it "addressed the enforceability" of AACWA. <u>See Suter</u>, 503 U.S. at 354 n.5. The Supreme Court *never* stated that <u>L.J. II</u> was overturned or abrogated. Indeed, most of the provisions that the Fourth Circuit had held to be privately enforceable (42 U.S.C. §§ 627(a)(2)(B) [now 622(b)(8)(A)], 671(a)(16), 675(1), and 675(5)) were not even at issue in <u>Suter</u>.

<u>Suter</u>'s actual holding is narrow: *one provision* of the AACWA reforms did not establish a private cause of action: 42 U.S.C. § 671(a)(15), which requires state plans to ensure that reasonable efforts are made to prevent foster care placements and to reunite promptly children who are removed. <u>See Suter,</u> 503 U.S. at 364 ("We conclude that 42 U.S.C. § 671(a)(15) neither confers an enforceable private right on its beneficiaries nor creates an implied cause of action on their behalf.").[17] Neither <u>L.J. I</u> nor <u>II</u> relied on § 671(a)(15), so this holding is not applicable.[18]

The decision cited three reasons why § 671(a)(15) was not privately enforceable: (1) the reasonable efforts language of 671(a)(15) did not state a clear requirement of its conditions on the State recipients of the federal grants, <u>see</u> 503 U.S. at 356, 57; (2) the statute did not include any additional statutory guidance of how "reasonable efforts" were to be measured and therefore

---

[17] <u>See also id.</u> at 357 ("Did Congress, in enacting [AACWA], unambiguously confer upon the child beneficiaries of the Act a right to enforce the requirement that the State make "reasonable efforts" to prevent a child from being removed from his home, and once removed to reunify the child with his family? We turn now to that inquiry.").

[18] In a footnote, the Court added that § 671(a)(9), which requires state plans to assure reporting by the state if it finds that a foster child has been abused or neglected, was not privately enforceable because it was contained in a state plan: <u>See Suter</u>, 503 U.S. at 359 n.10. The <u>Suter</u> Fix abrogates this ruling.

was too vague to indicate unambiguous congressional intent that it be privately enforceable, see id. at 359-60; and (3) the legislative history and implementing regulations did not indicate congressional intent that the provision was intended to be privately enforceable, id. at 361.[19]

On these points, the decision is clear. The decision is not perfectly clear, however, as to the scope of its holding. Despite the above statements stating that the Court was deciding only the enforceability of § 671(a)(15) and perhaps (a)(9), the Court elsewhere indicated a broader ruling applicable to the entire Act: "We hold that the Act does not create an enforceable right on behalf of respondents." Id. at 350. Some courts, including the Fourth Circuit, accepted the broader meaning and ruled that "there is no private right of action under the AACWA". Wildauer v. Frederick County, 993 F.2d 369, 373 (4th Cir.1993).

Congress was dismayed at the Suter decision, and passed legislation to "fix" it, with the particular goal of ensuring that foster children would have the right to sue to enforce AACWA. Defendants never mention this legislation, commonly called the "Suter Fix" law, even though the law expressly abrogated portions of Suter. It provides:

> In an action brought to enforce a provision of the Social Security Act, such provision is not to be deemed unenforceable because of its inclusion in a section of the Act requiring a State plan or specifying the required contents of a State plan. This section is not intended to limit or expand the grounds for determining

---

[19] One other aspect of Suter is significant. The decision mentioned several times that AACWA provided for alternative federal administrative enforcement of the state plan provisions, see id. at 358, 359 n.10, 360-61, but it clarified that this mechanism did not seem to "provide a comprehensive enforcement mechanism so as to manifest Congress' intent to foreclose a remedy under § 1983," id. at 360, indicating that the Court did not believe that a sufficient alternative comprehensive enforcement mechanism existed. This is not surprising. The Supreme Court has made clear that this factor (the last consideration in the multi-part test used to determine a private cause of action, and one that Defendants must assert to overcome a presumption of enforceability), is rarely found by the courts. See Blessing v. Freestone, 520 U.S. 329, 347 (1997) (pointing out that the Court had "found a remedial scheme sufficiently comprehensive to supplant § 1983" only twice, in inapt situations); see also Ball v. Rodgers, 492 F.3d 1094, 1117 (9th Cir. 1997) (stating that defendants did not contest the presumption with "good reason" because, "in Blessing, the Supreme Court made clear that the power of 'the Secretary of Health and Human Services ... to reject state Medicaid plans or to withhold federal funding to States whose plans did not comply with federal law' cannot foreclose a § 1983 remedy") (quoting Blessing, 520 U.S. at 347-48).

the availability of private actions to enforce State plan requirements other than by overturning any such grounds applied in <u>Suter v. Artist M.</u>, 112 S. Ct. 1360 (1992), but not applied in prior Supreme Court decisions respecting such enforceability; provided, however, that this section is not intended to alter the holding in <u>Suter v. Artist M.</u> that section 471(a)(15) of the Act is not enforceable in a private right of action.

1994 Acts, Section 555(b), Pub. L. 103-38, <u>codified</u> <u>at</u> 42 U.S.C. § 1320a-2. The provision is applicable to actions pending on October 20, 1994 or brought thereafter.

The <u>Suter</u> Fix had three components: (1) a provision is not unenforceable merely because it is included in a statute requiring or specifying the contents of a State plan; (2) <u>Suter</u>'s grounds that had not been applied in prior Supreme Court decisions were overturned; and (3) <u>Suter</u>'s holding that § 671(a)(15) was not enforceable was preserved. Of these, the first two are relevant. The <u>Suter</u> Fix prohibits use of the "State plan" reasoning of <u>Suter</u> to hold a provision of AACWA unenforceable, and it froze the appropriate analysis for determining the enforceability of a funding provision in the Social Security Act, but especially AACWA, to pre-<u>Suter</u> standards. These elements of the <u>Suter</u> Fix overruled any aspect of <u>Suter</u> that "abrogated" <u>L.J. II</u>.

The legislative history makes this clear. Both the original House committee report and the final Joint Conference Committee report state that the goal was to assure that individuals damaged by the failure of a state agency to follow the federal mandates of state plan provisions of the Social Security Act would be able to sue in the courts to the same extent that they could before <u>Suter</u>. As the Conference committee report stated:

The House committee report states that the provision does the following: "(1) responds to … Suter v. Artist M., which dramatically limited the ability of program beneficiaries to enforce the State plan titles of the Social Security Act; (2) ***preserves private rights of action as they existed before the Suter v. Artist M. Supreme Court decision***; and (3) reaffirms that the State plan titles … impose binding obligations on participating States to comply with the … Act."

The committee report further states: "***The purpose of this provision is to assure***

*that individuals who have been injured by a state's failure to comply with the state plan requirements are able to seek redress in the federal courts to the extent they were able to prior to the decision in Suter v. Artist M*. The provision does not alter the rules of statutory construction that the courts used prior to Suter v. Artist M. The provision does not alter the finding in Suter v. Artist M., that the 'reasonable efforts' provision, without further direction, is too vague to be enforceable in such an action. It only alters that portion of Suter v. Artist M. suggesting that failure of a state to comply with a state plan provision is not litigable as a violation of federal statutory rights."

       \*      \*      \*

While adopting a different formulation, *the conference agreement follows the intent of the House bill provision, which is to assure that individuals who have been injured by a State's failure to comply with the Federal mandates of the State plan titles of the Social Security Act are able to seek redress in the federal courts to the extent they were able to prior to the decision in Suter v. Artist M.*, while also making clear that there is no intent to overturn or reject the determination in Suter that the reasonable efforts clause of title IV-E does not provide a basis for a private right of action.

H.R. Conf. Rep. 102-1034, 102nd Cong., 2nd Sess. 1992, 1992 WL 321349, at \*1304 (Oct. 5, 1992).[20] The <u>Suter</u> Fix was enacted in October 1994 following many favorable votes.[21]

    Thus, the minimum objective of the <u>Suter</u> Fix was to make sure that litigation such as <u>L.J.</u> would not be defeated by <u>Suter</u>. The Supreme Court had questioned congressional intent, and

---

[20] Individual comments reflected this intent. For example, Senator Riegle was disturbed that "individuals – mainly low-income *children* [would not] have *recourse through the Federal courts when states fail to implement State plan requirements under the Foster Care program* of the Social Security Act[,]" complained that the Supreme Court had "shut the door to low-income children in State custody who are denied the services called for in a State plan mandated by [AACWA]," and added that "I do not think we can leave the people in these programs without any way to protect their interests." 138 Cong. Rec. S17689-01 (1992), 1992 WL 27940, at \*S3282.

[21] Congress showed considerable resolve in enacting the <u>Suter</u> fix. The original 1992 legislation (H.R. 11) passed both houses but was placed in larger legislation that was pocket vetoed. In 1993, it was reintroduced in identical form, and the new committee report confirmed that the objective remained the same. <u>See</u> 1992 H. Rep. No. 103-7, H.R. 103-7 (Feb. 2, 1993). It also was introduced as part of S.B. 620, described as "a bill to amend the Social Security Act to overturn the new limitations placed on private enforceability of State plan requirements by Suter v. Artist M., and for other purposes." 139 Cong. Rec. S3282-01, 1993 WL 78347 (Cong. Rec. Mar. 19, 1993). It was passed again, but an unrelated technicality again prevented enactment. Finally, in 1994, the <u>Suter</u> amendment was included in, passed and signed into law in two different statutes: 42 U.S.C. § 1320a-2, was passed as part of P.L. 103-382 (Oct. 20, 1994, 108 Stat 3518), and 42 U.S.C. § 1320a-10, P.L. 103-432 (Oct. 31, 1994, 108 Stat 4398). The final committee report language for this legislation did not change the prior years' conference reports and summaries. <u>See</u> Conf. Rep. for H.R. 6, 140 Cong. Rec. H10009-01, 1994 WL 534741, at \*926 (Sept. 28, 1994); Rep. on Legislative Activity during the 103d Cong. of the Comm. on Ways and Means, H. Rep. No. 103-875, Dec. 20, 1994. H.R. 103-875, 1994 WL 714562, at\*58 (Dec. 20, 1994).

Congress answered with a clear statement that foster children injured by AACWA violations have enforceable claims as they had before Suter, freezing the pre-Suter standard. To the extent that Suter could be read as a "change of law" that overrules L.J. II, the Suter Fix was another "change of law" in which Congress overruled Suter and restored the status quo ante. The Suter Fix vindicates L.J. II and provides requisite congressional intent for its continued validity.

In arguing that the Plaintiffs have no private right of action to enforce the Consent Decree, Defendants misstate the law – unequivocal for the last fifteen years - when they claim that "[r]ather than give rise to any duty enforceable by a private litigant, the AACWA requires only that a state have a child welfare plan that operates to the satisfaction of the federal Secretary of the Department of Health and Human Services and authorizes a financial penalty if a State fails to do so." (Defs. Mem. at 19). After the Suter Fix, courts acknowledged that for statutes within the Social Security Act (which includes AACWA), a private right of action *cannot* be rejected on the basis of a claim that all the statute requires is a plan. In Ball v. Rodgers, 492 F.3d 1094 (9th Cir. 1997), the Ninth Circuit held that

> Congress has explicitly legislated that a Medicaid Act [also part of the Social Security Act] provision cannot be construed as unenforceable under § 1983 'merely because it requires action under a state plan.'" (internal citations omitted). … Since the adoption of this statute, courts around the country have relied on it in holding some Medicaid Act rights enforceable under § 1983 even where the statute's "rights-creating" language is embedded within a requirement that a state file a plan or that that plan contain specific features. The "Suter fix" requires that we, likewise, reject the Director's argument that §§ 1396n(c)(2)(C) and (d)(2)(C) were enacted simply to set forth a policy or practice upon which the receipt of federal funds is conditioned."

Id. at 1111-12 (footnote omitted). Today, this principle is so universally accepted that courts often no longer mention the Suter Fix when analyzing statutes. Rather, as in Doe v. Kidd, 501 F.3d 348, 355-57 (4th Cir. 2007) (finding a private right of action to enforce a Medicaid

provision), the decisions simply presume that the fact that the State's obligations are set forth in a State plan requirement is not dispositive of the question of a private right of action and rely solely on the three-prong analysis required by the Supreme Court discussed below.

Since the Suter Fix, all courts, including the Fourth Circuit in White, have conducted new analyses of AACWA claims, applying Suter, the Suter Fix, and newer Supreme Court cases. To the extent that Wildauer had held otherwise, that decision was superseded. Thus, in White, the Fourth Circuit held that § 671(a)(10), which requires states to use "professional standards" to ensure that foster homes are qualified, was unenforceable due to vagueness and the availability of federal administrative enforcement,[22] but did not address any other AACWA provisions.

White briefly addressed the Suter Fix and concluded that the statute did not apply: it was enacted after the events in question and before litigation had been brought. See id. at 739 n.4. The Fourth Circuit also pointed out that (1) Congress had not overruled Suter's holding on § 671 (a)(15), which it believed logically should apply to (a)(10); and (2) Suter did not change the law. See id. ("Suter itself was not a novel holding, but rather rested upon settled legal principles.").

Thus, even under White, the Fourth Circuit's rulings on §§ 627(a)(2)(B) [now 622(b)(8)(A)], 671(a)(16), 675(1) and 675(5) in L.J. II remain good law. The Suter Fix requires that the pre-Suter standards control; in White, the Fourth Circuit confirmed that these prior standards were not changed by Suter; and L.J. II was decided under these prior standards. Given that the stated purpose of the Suter Fix was to ensure that cases like L.J. could enforce AACWA, it is difficult to see how L.J. II is not good law, post-Suter Fix. Defendants do not address the

---

[22] This aspect of White's analysis conflicts with Suter, the Suter Fix, and subsequent case law. See n.19, supra, discussing Suter, 503 U.S. at 360, and Blessing, 520 U.S. 329, 347-48. Moreover, the Suter Fix rejected the Secretary's role in enforcing a state plan as a valid consideration, as that is another way of focusing on the use of a State plan, which the Suter Fix prohibits as a disqualifying consideration.

Suter Fix, however, relying instead on the pre-Suter Fix statement in Wildauer and White's holding on § 671(a)(10).

Defendants' portrayal of a monolith of cases holding that AACWA is not privately enforceable (Defs. Mem. at 8-10) ignores a clear division among the courts. Some have held that the Suter Fix is insignificant because Suter did not change the law. But many others, which Defendants do *not* cite, find that some provisions, particularly §§ 622(b)(8)(A), 671(a)(16), 675(1), and 675(5), *are* enforceable in light of the Suter Fix and pre-Suter decisions.[23] Still others have found that foster parents and other service providers have enforceable rights.[24]

Finally, even if the Suter Fix did not assure the continued vitality of L.J. II, that decision remains good law under Supreme Court standards. Because Defendants do not offer any specific statutory analysis of their own, a full analysis of provisions is not appropriate. Nevertheless, a short review of how 42 U.S.C. § 671(a)(16) meets the Blessing/Gonzaga test will illustrate that AACWA provisions are indeed enforceable.

---

[23]  See Clark K. v. Quinn, No. 2:06-CV-1068-RCJ-RJJ, 2007 WL 1435428, at *10 (D. Nev. May 14, 2007) (affirming enforceability of rights to case plans with health and educational information on children, citing precedents of "many courts"); Kenny A. v. Purdue, 218 F.R.D. 277, 290-94 (N.D. Ga. 2003) (§§ 622(b)(10)(B)(i)-(iii) (statewide information system and services for permanency planning), 671(a)(10) (foster home standards), 671(a)(16) (case plans and case reviews); 671(a)(22) (services to foster children), 675(5)(D) (updated health and education records given to foster parents), and 675(5)(E) (timely petitions to terminate parental rights)); Brian A. v. Sundquist, 149 F. Supp. 2d 941, 945-49 (M.D. Tenn. 2000) (same, plus information system per § 622(b)(10)(B)(i)) (citing Jeanine B. v. Thompson, 877 F. Supp. 1268, 1283 (E.D. Wis. 1995)); Occean v. Kearney, 123 F. Supp. 2d 618, 624 (S.D. Fla. 2000) (finding that case review requirements of §§ 671(a)(16) & 675(5)(C) are enforceable); Norman v. McDonald, 930 F. Supp. 1219, 1227-28 (N.D. Ill. 1996) (finding that Suter Fix limited Suter's holding to finding (a)(15) unenforceable, leaving other sections enforceable: § 627(a)(2)(c) (reunification service program); 622(b)(2), 671(a)(4) (coordinating child welfare with other programs; 671(a)(16), 675(1), and 675(5)(c) (case plans and case review system); §§ 627(a)(2)(B), 671(a)(12) (notice and hearing rights); Marisol A. v. Giuliani, 929 F. Supp. 662, 683 (S.D.N.Y. 1996) (affirming claims under §§ 671(a)(10), 671(a)(16), inter alia, and citing L.J. II).

[24]  See ASW v. Oregon, 424 F.3d 970, 978-79 (9th Cir. 2005) (§§ 673(a)(3) (adoption assistance payments), 671(a)(12) (right to hearing when benefit under AACWA is denied); Timmy S. v. Stumbo, 916 F.2d 312, 316 (6th Cir. 1990) (§ 671(a)(12) (fair hearing notice rights for foster parents)); Cal. Alliance of Child and Fam. Servs. v. Allenby, 459 F. Supp. 2d 919, 922-25 (N.D. Cal. 2006) (§ 675(4)(A) (foster care maintenance payments)); Missouri Child Care Assoc'n v. Martin, 241 F. Supp .2d 1032, 1040-42 (W.D. Mo. 2003) (same)).

> A statute creates an enforceable right if: (1) Congress intended that the provision in question benefit the plaintiff; (2) the right ostensibly protected by the statute "is not so vague and amorphous that its enforcement would strain judicial competence"; and (3) the statute unambiguously imposes a binding obligation on the states. Blessing v. Freestone, 520 U.S. 329, 340-41 (1997) (internal quotations omitted). In analyzing these requirements, a court must be careful to ensure that the statute at issue contains "rights-creating language" and that the language is phrased in terms of the persons benefited, not in terms of a general "policy or practice." Gonzaga Univ. v. Doe, 536 U.S. 273, 284, 287 (2002).

Pee Dee Health Care v. Sanford, 509 F.3d 204, 210 (4th Cir. 2007) (reversing district court and holding that Medicaid reimbursement provision creates a right of action under § 1983). Gonzaga emphasizes that the intent to confer enforceable rights must be clear. See 536 U.S. at 280, 283.

The right to timely written case plans and case reviews that meet the definitions set forth in §§ 675(1) and 675(5)(B), as required by § 671(a)(16), fits squarely with the Blessing/Gonzaga test. Section 671(a)(16) requires states "to provide for the development of a case plan (as defined in section 675(1) of this title) for each child receiving foster care maintenance payments under the State plan and provides for a case review system which meets the requirements described in section 675(5)(B) of this title with respect to each such child[.]" The standards for each are explicitly set forth in the statute.

The first prong of the test, that "Congress intended that the provision in question benefit the plaintiff," is readily met here: the statutes are replete with the required "rights creating" language and "individually focused terminology." Gonzaga, 536 U.S. at 287. Section 671(a)(16) requires the State to develop a case plan "*for each child* receiving foster care maintenance payments" and to have a case review system "with respect to *each such child*." Id. (emphasis added). The term "the child" appears repeatedly in the enumerated list of what the case plan must include. See, e.g., § 675(1)(A), "A description of the type of home or institution

in which *a child* is to be placed, including a discussion of the safety and appropriateness of the placement and how the agency which is responsible for *the child* plans to carry out the ... judicial determination made *with respect to the child* in accordance with section 672(a)(1) of this title." Terms of universal applicability such as "each child" denote a congressional intent to benefit the plaintiff.  See Kidd, 501 F.3d at 356 (finding that a Medicaid state plan requirement applicable to "all" individuals eligible for Medicaid assistance shows that Congress "expressly intended" to benefit the plaintiff and others, thereby satisfying the first prong).

Under the second prong, "the right ostensibly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence," § 671(a)(16) is a model of what Congress has done when it intends to have a privately enforceable statute.  Not only is the case plan and case review system mandatory, but those terms are defined in great detail and precision in §§ 675(1) and 675(5), providing a virtual checklist against which compliance can be measured.  Regulations promulgated by DHHS provide even further details, such as timelines, see 45 C.F.R. § 1356.21(g), making enforcement well within judicial competence.

For the third prong (mandatory nature of the obligation), the statute unambiguously imposes a binding obligation that the State "*shall* have a plan … (16) *which provides* for the development of a case plan (as defined in section 675(1) of this title)[.]"  42 U.S.C. § 671(a)(16) (emphasis added).   42 U.S.C. § 675(1) says that the case plan is a document "which includes *at least* the following …," for example, "(G) A plan for *ensuring* the educational stability of the child[.]"  (Emphasis added).  These are mandatory, not precatory terms.  See H.R. Conf. Rep. 102-1034, 1992 WL 321349, at *1304 ("the State plan titles of the Social Security Act impose binding obligations on participating States to comply with the requirements of the Act.").

### D. Conclusion.

The substantive due process rights found in <u>L.J. I</u> have not been reversed and indeed are recognized by courts across the country. The Fourth Circuit's holding in <u>L.J. II</u> that foster children have enforceable rights under AACWA also remains good law: it has not been overruled or reversed, and, through the <u>Suter</u> Fix, Congress confirmed that AACWA provisions were to be enforced by children based upon pre-<u>Suter</u> standards, such as those applied in <u>L.J. II</u>. But Plaintiffs do not even need to prevail on these arguments and instead need only have an arguable or colorable basis for their claims. Defendants do not come close to showing an absence of *any* colorable basis. This Court continues to have subject matter jurisdiction over the Consent Decree, and, for that reason, Defendants' motion must be denied.

### IV. Defendants' Rule 60(b)(5) Analysis Is Fatally Flawed.

### A. The Motion was not filed within a reasonable time.

As a threshold matter, the Court must consider the timeliness of Defendants' motion under Rule 60(b)(5). <u>See</u> Fed. R. Civ. P. 60(c)(1) ("**Timing.** A motion under Rule 60(b) must be made within a reasonable time[.]"). Defendants bear the burden of proving that the motion was filed within a reasonable time. <u>See</u> <u>Central Operating Co. v. Util. Workers of Am.</u>, 491 F.2d 245, 253 (4th Cir. 1974) (holding that the movant bears the burden to show timeliness and must offer a "satisfactory explanation" for any delay); 11 Wright & Miller, <u>supra</u>, § 2857 at 260 (2d ed. 1995) ("The cases show that" the courts "have been unyielding in requiring that a party show good reason for the failure to take appropriate action sooner.").

Defendants' Motion is seventeen years late. If the Court did lose subject matter jurisdiction over the Consent Decree, that occurred in 1992, after <u>Suter</u>. That same year, <u>Rufo</u>

relaxed the standards for State defendants to seek relief from consent decrees. Indeed, the history of this case shows Defendants' awareness of the <u>Suter</u> and <u>Rufo</u> line of decisions. They opposed Plaintiffs' request for modification of the Consent Decree based on <u>Rufo</u> and <u>Frew v. Hawkins</u>, 540 U.S. 431 (2004). <u>See</u> Dkt. 500, at 282-83. On the eve of the contempt hearing, Defendants wrote to the Court to advise that they would argue <u>Suter</u>, <u>White</u>, and <u>Wildauer</u>. (Dkt. 531). They did not need <u>Horne</u> to make this argument in 1992 or in 1997 after <u>White</u>.

Defendants do not attempt to justify their seventeen-year delay in bringing this Motion, other than the implicit but erroneous argument that they could not do so prior to <u>Horne</u>. Their lack of excuse is a per se mandatory ground for denying the motion. <u>See</u> <u>Nat'l Org. for Women v. Operation Rescue</u>, 47 F.3d 667, 669 (4th Cir. 1995) (per curiam) (affirming denial of relief where defendants provided "no valid reason why they delayed for almost a year after the decision in *Bray* before filing the motion"); <u>McLawhorn v. John W. Daniel & Co.</u>, 924 F.2d 535, 538 (4th Cir.1991) (holding that a delay of three to four months in bringing Rule 60(b) motion is deemed to be untimely absent adequate explanation); <u>Clayton v. Ameriquest Mortg. Co.</u>, 388 F. Supp. 2d 601, 606 (M.D.N.C. 2005) (noting that the "Fourth Circuit has upheld denials of 60(b) motions that were filed as little as two and one-half months" after judgment was entered) (citing numerous cases); <u>Conway v. Takoma Park Vol. Fire Dept., Inc.</u>, Civ. A. Nos. DKC-86-1611, 88-65, 2001 WL 194081, at *3 (D. Md. Feb. 26, 2001) ("In the case where a movant relies on a change in the law as the basis for its Rule 60(b) motion, a year-long delay is considered unreasonable particularly in light of the movant's lack of explanation.").

Plaintiffs have been prejudiced by Defendants' delay. For the last three years, Plaintiffs have engaged in protracted negotiations with the Defendants to establish a new consent decree,

culminating in the Modified Consent Decree. In 2007, Plaintiffs filed a 400-page contempt and modification motion and a 200-page reply memorandum, but agreed to suspend litigation when Defendants asked to re-start the negotiations. Plaintiffs also have suspended aggressive monitoring (such as PIA requests) during the latter period, relying on Defendants' good faith.

Again, this is a ***seventeen-year*** delay. If the timeliness rule of Rule 60(c) has any teeth, Defendants' Motion should be denied as untimely as a threshold matter.

> **B.      Defendants do not assert any equitable considerations other than their legal argument that the Court lacks subject matter jurisdiction.**

Another defect of Defendants' Rule 60(b)(5) motion is that it rests entirely on the purported lack of subject matter jurisdiction and makes no effort to invoke Rule 60(b)(5)'s equitable balancing test. This, too, is a fatal defect.

Under <u>Rufo</u> and <u>Horne</u>, "courts must take a 'flexible approach'" to Rule 60(b)(5) motions that allows courts to ensure that 'responsibility for discharging the State's obligations is returned promptly to the State and its officials' when the circumstances warrant." <u>Horne</u>, 129 S. Ct. at 2585 (quoting <u>Rufo</u>, 502 U.S. at 381; <u>Frew</u>, 540 U.S. at 442). The point of such a motion is not to challenge the underlying legal basis for the decree, <u>see</u> <u>id.</u>. at 2593 ("Rule 60(b)(5) may not be used to challenge the legal conclusions on which a prior judgment or order rests"), but rather to determine whether "'a *significant* change either in factual conditions or in law' renders continued enforcement '*detrimental to the public interest*.'" <u>Id.</u> (quoting <u>Rufo</u>, 502 U.S. at 382) (emphasis added).[25] <u>See</u> <u>also</u> <u>Rufo</u>, 502 U.S. at 389 ("To hold that a clarification in the law automatically opens the door for relitigation of the merits of every affected consent decree would undermine

---

[25] For these reasons, Defendants' cursory reference to abstention cases (Defs. Mem. at 11), which they do not raise in their argument, is immaterial. Defendants litigated and lost that issue in 1987, twenty-two years ago.

the finality of such agreements and could serve as a disincentive to negotiation of settlements in institutional reform litigation.").

This standard is real: Defendants are not entitled to relief under Rule 60(b)(5) merely "when it is no longer convenient to live with the terms of a consent decree." Rufo, 502 U.S. at 383; see also id. at 391 ("a consent decree is a final judgment that may be reopened only to the extent that equity requires"); id. at 393 (O'Connor, J., concurring) ("Determining what is 'equitable' is necessarily a task that entails *substantial discretion*, particularly in a case like this one, where *the District Court must make complex decisions requiring the sensitive balancing of a host of factors*.") (emphasis added). See also, e.g., Nat'l Org. for Women, 47 F.3d at 669 ("[t]he power of a district court to vacate a judgment under Federal Rule of Civil Procedure 60(b) rests within the district court's equitable powers").

Defendants completely ignore this test and instead mistakenly rely on the purported lack of subject matter jurisdiction, which is not even a proper issue under Rule 60(b)(5). The reason is clear: Defendants cannot win on the equities, so they do not try to make the argument.

### C. The Supreme Court's decision in *Horne* does not apply to Defendants' motion and in any event does not justify Defendants' requested relief.

Defendants' invocation of Horne as the justification for the Motion fails at the outset: Horne does not address subject matter jurisdiction at all. The word "jurisdiction" is not mentioned in the decision (except peripherally, in a section on standing that is not material here). Horne also did not involve a change in the law or an alleged legal infirmity in the decree and instead addressed the entirely different question of whether a decree should be vacated because the defendants had come into compliance with federal law by means other than those set forth in the decree – in which case no further federal interest might need protection. For Horne even

arguably to apply here, Defendants would have to move to end federal jurisdiction by showing compliance through means other than those specified in the current Consent Decree. The motions in <u>Horne</u> and this case thus have virtually no relationship or common elements.

Defendants' failure to base their motion on the core issue in <u>Horne</u> – the appropriateness of continued enforcement of a federal decree when state defendants have complied with federal law by other means – is indisputable. Defendants do not assert that they are in compliance with *any* federal law requirements. This case therefore stands in stark contrast with <u>Horne</u> and with Defendants' other principal case, <u>Evans v. City of Chicago</u>, 10 F.3d 474, 480-83 (7th Cir. 1993), where the Seventh Circuit had rejected plaintiffs' federal constitutional claims, eliminating any federal interest in continued enforcement of the consent decree.

Here, the federal interest in ensuring compliance with the Constitution and with AACWA and its amendments remains. The only question that Defendants raise is whether Plaintiffs have lost standing to enforce that federal interest through the Consent Decree. While that issue can be raised in a Rule 60(b)(5) motion, that fact flows from Rule 60(b)(5) itself, not anything decided by <u>Horne</u>. <u>See</u> <u>O'Sullivan</u>, 396 F.3d at 866-68 (holding that, while an alleged lack of standing due to a change in law cannot undermine the finality of a consent decree, it could be considered by the court in a Rule 60(b)(5) analysis of whether continued enforcement was equitable).

Thus, Defendants are wrong in contending that <u>Horne</u> somehow established a material change in the law requiring a Rule 60(b)(5) motion. Cases such as <u>Evans</u> and <u>O'Sullivan</u> were decided more than a decade ago. <u>Rufo</u> was decided seventeen years ago. <u>Horne</u> broke no new constitutional ground and instead applied *existing* law set forth in <u>Frew</u> and <u>Rufo</u> to the extraordinary situation in which, <u>inter alia</u>, a federal court had issued an order to a non-party

state legislature requiring it to appropriate certain funds and various State officials were battling among themselves over whether such an order and various contempt penalties were proper.

.       In sum, if any material change in law has occurred, it happened seventeen years, when the procedural law for Rule 60(b)(5) was changed by <u>Rufo</u> and, according to Defendants, the substantive law regarding the enforceability of AACWA was changed by <u>Suter</u>. <u>Horne</u> has no bearing on either event.

> **D.      The original Consent Decree and the new proposed Modified Consent Decree are equitable and satisfy any federalism concerns raised in *Horne* and confirm that continued enforcement by this Court is not "detrimental to the public interest."**

As Defendants do not attempt to weigh the equities as required in a Rule 60(b)(5) motion, Plaintiffs will not engage in protracted analysis (reserving the right to respond should Defendants ever make such a motion in the future). Nevertheless, a few principles should be noted.

1.       Defendants' invocation of federalism concerns as a bar against approval of the parties' Joint Motion is ironic, for the Modified Consent Decree ("MCD") was crafted with Defendants' federalism concerns addressed front and center. Every federalism concern raised in <u>Horne</u>, <u>see</u> 129 S. Ct. at 2593-95, is addressed in the Modified Consent Decree.

*Promoting prompt exit.* The Modified Consent Decree sets forth clear standards and outcomes for Defendants that will allow them to exit from the decree if they demonstrate compliance for an eighteen-month period. By contrast, the current decree is open-ended and in many areas requires 100% compliance with all terms for all children. Thus, where <u>Horne</u> discusses the need for a "flexible approach [that] allows courts to ensure that 'responsibility for discharging the State's obligation is returned promptly to the State and its officials' when the circumstances warrant," <u>Horne</u>, 129 S. Ct. at 2595 (quoting <u>Frew</u>, 540 U.S. at 442), the parties

have done just that – agreeing as to the specific standards and metrics that will allow the Defendants to exit federal court jurisdiction and requiring only an eighteen-month period of compliance before exit can occur.  Indeed, Defendants have touted these virtues to the Court:

> In general, [the MCD] follows the approach used in more recent foster care consent decrees approved in other jurisdictions, some of **which have led to successful resolution of those cases and termination of federal jurisdiction. It includes specific terms and standards upon which the Defendants will be deemed to be in compliance and allowed to terminate the Consent Decree and exit from active supervision by this Court**….Furthermore, the proposed Modified Consent Decree requires the parties to utilize a variety of resolution procedures to facilitate compliance and resolve disputes without resort to the Court.

(Dkt. 556, Mem. in Supp. of Jt. Mot. for Jud. Approval at 4) (emphasis added).  Having negotiated and agreed to these standards and timelines, Defendants cannot contend that the metrics fail to meet the goal of securing prompt compliance and termination of court oversight.

*Minimizing interference with State budget.*  Much of the Supreme Court's dismay in Horne stemmed from the district court's active assertion of federal jurisdiction over state budget issues.  See Horne, 129 S. Ct. at 2593-94, 2600, 2606-07.  By contrast, the Modified Consent Decree has specific measures to ensure that no undue interference with the budget occurs here.  Specific cost-impact requirements expressly state that the conditions are subject to budget approval by the Governor, and then by the General Assembly.[26]

*Allowing flexibility for future administrators*.  Another cited federalism issue is that successor administrators not be unnecessarily bound by "outdated consent decrees that limit their ability to respond to the priorities and concerns of their constituents."  Horne, 129 S. Ct. at 2594

---

[26] See, e.g., MCD at 16, § E.1 ("The DHR Secretary … shall include in the DHR budget proposal funds that are sufficient, in the Secretary's judgment, to ensure that in-home family preservation services are available in the size and scope determined by the assessment and, if included in the Governor's budget, shall advocate for the appropriation of such funds by the General Assembly.").  The decree also specifically provides that, where any commitments contemplate that Defendants will enter into a contract, any such additional commitment is subject to the condition that Defendants must secure all necessary approval required by law.  Id. at 3, § 1.M.

(internal quotation and citation omitted).  The Modified Consent Decree specifically provides Defendants with the right to seek modification or removal of outcome standards in the future should the circumstances warrant a change.  <u>See</u> MCD at 9, § V.E ("After January 1, 2011, Defendants may petition the Court to modify or remove an Exit Standard on the grounds that it should not be required due to significantly changed or unforeseen circumstances.")

*No collusion.*  Much of the Supreme Court's concern in <u>Horne</u> arose from the suggestion of collusion between plaintiffs and defendants in order to achieve increased funding for schools,.  <u>See Horne</u>, 129 S. Ct. at 2596 ("Precisely because different state actors have taken contrary positions in this litigation, federalism concerns are elevated.  And precisely because federalism concerns are heightened, a flexible approach to Rule 60(b)(5) relief is critical.").  No collusion could be alleged here.  To ensure that the State's allegedly separate and independent interests from those of Defendants DHR and BCDSS would be protected, the Attorney General's Chief of Litigation independently reviewed all terms and then joined in the negotiations to protect those alleged independent interests.  <u>See</u> Ex. 3, Beller Decl. at 3, 4, 6 (Dkt. 556, Ex. E).  Even the Governor has publicly praised the Consent Decree.  (Ex. 4, June 23, 2009 press release).

*On-going federal interest and incorporation of federal law.*  Far from straying beyond federal law, many of the new provisions reflect specific requirements of federal law adopted since the first Consent Decree was entered in 1988.  For example, just as federal law now requires Defendants to maintain an education plan for each child, 42 U.S.C. § 675(1)(G), the Modified Consent Decree does the same.  <u>See</u> MCD at 35 § 2.a(3).  Other provisions of the Consent Decree, such as the requirement for initial and follow-up health screenings (¶¶ 21.B-D) and prompt enrollment in school (¶ 19.A), also now are required by federal law.  <u>See</u> 42 U.S.C.

§ 622(b)(15)(A)(i) (health screenings), 42 U.S.C. § 675(1)(G)(ii)(II) (prompt enrollment).

In nearly diametric contrast, <u>Horne</u> presented compelling federalism/separation of powers issues, as the district court was effectively controlling the state legislature, which was not even a party, and had unilaterally extended its jurisdiction from one school district to the entire state. The Modified Consent Decree, agreed to by the parties, involves no such conflict.

Defendants make no real effort to argue otherwise.  Instead, they pay lip service to federalism concerns, liberally quoting from <u>Horne</u> and declaring that "the consent decree and proposed decree contain provisions that require the Court to oversee the State's child welfare program and, in determining such things as whether 'reasonable efforts' have been made, require the Court to substitute its judgment for that of the federal Secretary of Health and Human Services."  (Defs. Mem. at 16).  This is little more than saying that federal courts should have no jurisdiction at all over state agencies.  Defendants fail to explain how *this* decree poses undue burdens beyond those faced by the thousands of other defendants who violate federal laws.

2.      Defendants have admitted that the Modified Consent Decree is judicially enforceable and will benefit the children.  On June 23, 2009, they issued a joint press release with Plaintiffs lauding the Modified Consent Decree: "The filing signifies an ***enforceable agreement*** by both sides on how to address and resolve some long standing systemic child welfare issues in Baltimore City.  The new decree – subject to approval by the United States District Court for the District of Maryland – ***will ultimately result in BCDSS providing better, more comprehensive*** care for the more than 5,000 foster children in Baltimore City.  (Ex. 5, June 23, 2009 DHR press release) (emphasis added).  The Governor praised the new decree as "***an important step that will result in a stronger child welfare system*** for the most vulnerable

children in our State, particularly in Baltimore City."  (Ex. 4, June 23, 2009 press release) (emphasis added).  Defendants' admission that the MCD *is* enforceable and *will* result in BCDSS "providing better, more comprehensive care" for Plaintiffs belies their claim that "prospective application [of the MCD] is no longer equitable."  (Defs. Mem. at 1).  .

3.     Rather than address the decrees at issue, Defendants conflate the test for whether the federal statutes sufficiently set forth clear terms for private enforcement with the standard for determining whether the terms of the original Consent Decree and the Modified Consent Decree are enforceable.  <u>See</u> Defs. Mem. at 16, 20, & 20-21 n.14.  This is incorrect.  Indeed, the assertion flies in the face of a long twenty-year history.  Defendants have never complained about the terms of the original Consent Decree as being too "vague" or "amorphous" to be implemented.  Defendants have issued 42 compliance reports over the last twenty years measuring and demonstrating their alleged compliance with these supposedly impossible-to-understand provisions.  When Defendants responded to Plaintiffs' contempt petition, they questioned the specificity of only a few provisions, but never stated that they were vague or amorphous.  As for the Modified Consent Decree, having just agreed to its terms and moved for judicial approval, Defendants should not be heard to say that the terms are too vague to be judicially enforced.

4.     Finally, Defendants cannot complain that the Modified Consent Decree is oppressive.  At the August 5 hearing, Secretary Donald forthrightly told the Court that DHR would implement all of the measures regardless of the status and outcome of this Motion, and that Defendants' commitment to this "strong" agreement was "unwavering."  (Ex. 1, 8/5/09 Hr'g Tr. at 8-9).  Her statement makes clear where the balance of equities lies.  Approval of the

Modified Consent Decree is not "detrimental to the public interest."

In sum, Defendants make no showing that the Modified Consent Decree offends federalism. They make no showing that any interest identified in <u>Horne</u> is at issue here. They make no showing of any recent change in the law that materially affects this Court's ability to exercise jurisdiction. The Motion should be denied, and both parties should be allowed to attend to the business of improving the services and protections for children as required by federal law.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court should deny Defendants' Motion and approve the Modified Consent Decree.

Respectfully submitted,

<table>
<tr><td>_____/s/_____</td><td>_____/s/_____</td></tr>
<tr><td>Mitchell Y. Mirviss</td><td>Rhonda Lipkin</td></tr>
<tr><td>Fed. Bar No. 05535</td><td>Fed. Bar No. 04120</td></tr>
<tr><td>Venable LLP</td><td>Public Justice Center</td></tr>
<tr><td>750 East Pratt Street   .</td><td>One North Charles Street</td></tr>
<tr><td>Suite 900</td><td>Suite 200</td></tr>
<tr><td>Baltimore, MD 21202</td><td>Baltimore, MD 21201</td></tr>
<tr><td>(410) 244-7400</td><td>(410) 625-9409</td></tr>
<tr><td>Fax: (410) 244-7742</td><td>Fax: (410) 625-9423</td></tr>
<tr><td>mymirviss@venable.com</td><td>lipkinr@venable.com</td></tr>
</table>

Attorneys for Plaintiffs