# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

L.J., et al.,

     *Plaintiffs,*

         v.

RUTH MASSINGA, et al.,

     *Defendants.*

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

No. JFM-84-4409

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT
## OF MOTION TO VACATE DECREE AND IN OPPOSITION
## TO ENTRY OF PROPOSED REVISED DECREE

DOUGLAS F. GANSLER
Attorney General of Maryland

JOHN B. HOWARD, JR.
Bar No. 8980
Deputy Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
(410) 576-6300; (410) 576-7003 (fax)
jbhoward@oag.state.md.us

DAVID E. BELLER
Bar No. 500
JULIA DOYLE BERNHARDT
Bar No. 25300
MILLICENT EDWARDS GORDON
Bar No. 3204
Assistant Attorneys General
311 West Saratoga Street, Suite 1015
Baltimore, Maryland 21201
(410) 767-7726; (410) 333-0026 (fax)
Dbeller@dhr.state.md.us
Jbernhar@dhr.state.md.us
Mgordon2@dhr.state.md.us

Attorneys for Defendants

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................. 1

ARGUMENT ........................................................................................................ 5

I.      DEFENDANTS HAVE PROPERLY CHALLENGED THE
        COURT'S POWER TO ENTER AND ENFORCE THE
        CONSENT DECREE. ................................................................................ 5

        A.      Rule 60(b)(5) Permits Modification and Termination
                of a Consent Decree, Notwithstanding its Status as a
                "Final Order". ................................................................................ 6

        B.      Defendants Expressly Reserved the Right to Challenge
                Jurisdiction in Subsequent Litigation. ................................................ 8

        C.      Res Judicata Does Not Bar the Relief Sought in
                Defendants' Motion to Vacate the Consent Decree. ......................... 9

II.     THE CONSENT DECREE AND PROPOSED DECREE
        ARE NOT SUPPORTED BY A FEDERAL CLAIM. .............................. 12

III.    THE CONSENT DECREE SHOULD BE VACATED, AND
        THE COURT SHOULD DECLINE ENTRY OF THE
        PROPOSED    DECREE    BECAUSE    PROSPECTIVE
        ENFORCEMENT WOULD BE INEQUITABLE ..................................... 17

CONCLUSION ................................................................................................. 20

# TABLE OF AUTHORITIES

## Cases

*Agostini v. Felton*, 521 U. S. 203 (1997) ............................................................. 7

*Alger v. County of Albany*, *N.Y.*,
    489 F. Supp. 2d 155 (N.D.N.Y. 2006) .......................................... 16

*Alliance to End Repression v. Chicago*, 742 F.2d 1007 (7th Cir. 1984) ......................... 18

*Angela R. v. Clinton*, 999 F.2d 329 (8th Cir. 1993) ............................................. 4

*Aristotle P. v. Johnson*, 721 F. Supp. 1002 (N.D. Ill. 1989) ............................ 15

*ASW v. Oregon*, 424 F.3d 970 (9th Cir. 2005) ................................................. 13

*Ball v. Rodgers*, 492 F.3d 1094 (9th Cir. 2007) ............................................... 13

*Basel v. Bielaczyk*, No. 74-40135-BC,
    2009 WL 2843906 (E.D. Mich, September 1, 2009) .......................... 3, 4, 19

*Benjamin v. Jacobson*, 172 F. 3d 144 (2nd Cir. 1999) ........................................ 6

*Blackwelder Furniture Co. v. Seilig Mfg. Co.*,
    550 F.2d 189 (4th Cir. 1977) ................................................ 9

*California Alliance of Child & Family Servs. v. Allenby*,
    459 F. Supp. 2d 919 (N.D. Cal. 2006) ........................................ 13

*Carson P. v. Heineman*, 240 F.R.D. 456 (D. Neb. 2007) ....................................... 14

*Charlie H. v. Whitman*, 83 F. Supp. 2d 476 (D.N.J. 2000) ............................... 14, 15, 16

*Chicot County Drainage Dist. v. Baxter State Bank*,
    308 U.S. 371 (1940) .......................................................... 8

*D.G. v. Henry*, 594 F. Supp. 2d 1273 (N.D. Okla. 2009) ...................................... 15

*Daniel H. v. City of New York*,
    115 F. Supp. 2d 423 (S.D.N.Y. 2000) ......................................... 16

*David B. v. McDonald*, 116 F.3d 1146 (7th Cir. 1997) ..................................... 17, 19

*Des Moines Nav. & R. Co. v. Iowa Homestead Co.*,
   123 U.S. 552 (1887) ....................................................................... 8

*Evans v. City of Chicago*,
   10 F.3d 474 (7th Cir. 1993) ................................................. *passim*

*Firefighters v. Stotts*, 467 U.S. 561 (1984)................................. 17

*Freeport-McMoRanInc. v. K N Energy, Inc.*, 498 U.S. 426 (1991) .................................... 9

*Frew v. Hawkins*, 540 U.S. 431 (2004) ........................................ 7, 9

*Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002)................... 12, 13, 15, 16

*Harris v. James*, 127 F.3d 993 (11th Cir. 1997) .............................. 14

*Horne, Superintendent, Arizona Public Instruction v. Flores*,
   — U.S. —, 129 S. Ct. 2579 (2009)........................................ *passim*

*In re: Bulldog Trucking*, 147 F.3d 347 (4th Cir. 1998) ................... 8

*Jeanine B. v. Thompson*, 877 F. Supp. 1268 (E.D. Wis. 1995) ......... 13

*Joseph A. v. Ingram*, 275 F.3d 1253 (10th Cir. 2002) ..................... 15

*Komyatti v. Bayh*, 96 F.3d 955 (7th Cir. 1996) ............................. 19

*Kontrick v. Ryan*, 540 U.S. 443 (2004) ........................................ 8

*L.J. v. Massinga*, 699 F. Supp. 508 (D. Md. 1988) ............... 5, 8, 9, 10

*L.J. v. Massinga*, 838 F.2d 118 (4th Cir. 1988)............................. 10

*Milburn v. Anne Arundel County Dept. of Soc. Servs.*,
   871 F.2d 474, 479 (4th Cir. 1989) ....................................... 11

*Missouri Child Care Ass'n v. Martin*,
   241 F. Supp 2d 1032 (W. D. Mo. 2003) ................................ 13

*Missouri v. Jenkins*, 515 U.S. 70 (1995) ...................................... 1

*Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826 (1989) ......... 9

*Norman v. McDonald*, 930 F. Supp. 1219 (N. D. Ill. 1996)............. 13

*O'Sullivan v. City of Chicago*, 396 F.3d 843 (7th Cir. 2005) ............... *passim*

*Office of Child Advocate v. Lindgren*, 296 F. Supp. 2d 178 (D.R.I. 2004) ......................... 4

*Olivia Y. v. Barbour*, 351 F. Supp. 2d 543 (S.D. Miss. 2004) ................................... 14, 15

*Pendleton v. State*, 398 Md. 447, 921 A.2d 196 (2007) .................................... 12

*Plaut v. Spendthrift Farm, Inc.*, 514 U. S. 211 (1995) .......................................... 6

*Plyler v. Moore*, 100 F.3d 365 (4th Cir. 1996) ................................................... 6

*Real Truth About Obama, Inc. v. Fed. Election Comm'n*,
575 F.3d 342 (4th Cir. 2009) ................................................................... 9

*Rufo v. Inmates of the Suffolk County Jail*, 502 U.S. 367 (1992) ...................................... 1

*Shakman v. City of Chicago*, 426 F.3d 925 (7th Cir. 2005) ......................................... 2, 19

*Suter v. Artist M.*, 503 U.S. 347 (1992) ......................................... 12, 13, 14, 15

*Swift & Co. v. United States*, 276 U.S. 311 (1928) ........................................ 8

*United States v. Board of Educ. of City of Chicago*,
799 F.2d 281 (7th Cir. 1986) ................................................................ 17

*United States v. Board of Educ. of City of Chicago*,
No. 80 C 5124, 2009 WL 3111067 (N.D. Ill. Sept. 24, 2009) ................................ 3, 19

*United States v. Swift & Co.*, 286 U.S. 106 (1932) .......................................... 8

*Virginia Office of Prot. and Advocacy v. Virginia Dept. of Educ.*,
262 F. Supp. 2d 648 (E.D. Va. 2003) .................................................... 6, 16

*Weller v. Department of Soc. Servs. for the City of Baltimore*,
901 F.2d 387 (4th Cir. 1990) ................................................................ 11

*White v. Chambliss*, 112 F.3d 731 (4th Cir. 1997) ............................................... 11, 13, 14

*White v. Roughton*, 689 F.2d 118 (7th Cir. 1982) ........................................... 18

*Winter v. Natural Res. Defense Council, Inc.*,
__ U.S. __, 129 S. Ct. 365 (2008) .......................................................... 9

## Statutes

42 U.S.C.

§ 1320a-2 ..................................................................................... 11, 13

§ 1983 ................................................................................ 9, 13, 14, 15, 18

§ 620-29i ......................................................................................... 4, 14

§ 622(b) ............................................................................................... 15

§ 670-79b ........................................................................................ 4, 14

§ 671(a)(1) ............................................................................................ 13

§ 671(a)(10) .......................................................................................... 13

§ 671(a)(15) .......................................................................................... 13

§ 671(a)(16) .......................................................................................... 14

§ 671(a)(18) .......................................................................................... 15

§ 675(a) ................................................................................................ 15

20 U. S. C. § 7902 ....................................................................................... 2

Pub L. No. 103-382, 108 Stat. 3518 ............................................................. 11

Pub. L. No. 104-188, 110 Stat. 1755 ............................................................ 15

Pub. L. No. 96-272, 94 Stat. 500 ................................................................... 4

## Rules

Fed. R. Civ. P. 60(b) ....................................................................... *passim*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

L.J., *et al.,*

      *Plaintiffs,*

          v.

RUTH MASSINGA, *et al.,*

      *Defendants.*

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Civil Case No. JFM-84-4409

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO VACATE DECREE
AND IN OPPOSITION TO ENTRY OF PROPOSED REVISED DECREE**

**INTRODUCTION**

An implicit premise of Plaintiffs' opposition to the dissolution of the decades-old

consent decree in this case is the notion that the longer a decree is in place, the more it is

insulated from developments in the law, including ones that demonstrate why the decree

was untenable even at its inception. This notion is completely at odds with the Supreme

Court's most recent pronouncements about the principles that should govern a court's

decision, under Rule 60(b)(5), to vacate or modify a federal-court order that involves, as

the decree in this case does, "areas of core state responsibility" and that therefore raises

"sensitive federalism concerns." *Horne v. Flores*, ___ U.S. ___, 129 S. Ct. 2579, 2593

(2009); *see Missouri v. Jenkins*, 515 U.S. 70, 99 (1995).

The long-standing injunction in this case has "the effect of dictating state or local

budget priorities" and controlling the allocation of "limited funds," and it therefore

threatens to "eviscerate[] [the] States' discretionary authority over its own program and

budgets and force[] state officials to reallocate state resources and funds." *Horne*, 129 S. Ct. at 2593-94 (citation omitted). In such cases, "Rule 60(b)(5) serves a particularly important function" and the Court must apply a "flexible standard" that respects core principles of federalism. *Horne*, 129 S. Ct. at 2593 (citing *Rufo v. Inmates of the Suffolk County Jail*, 502 U.S. 367, 384, 393 (1992)).

According to Plaintiffs, the injunction cannot be vacated because it is "final" and principles of claim preclusion, or res judicata, therefore supposedly prevent it from ever being revisited. But res judicata does not endow an ongoing injunctive decree with immortality, and "democracy does not permit public officials to bind the polity forever." *Evans v. City of Chicago*, 10 F.3d 474, 478 (7th Cir. 1993) (en banc). "[T]emporary officeholders may not contract away the basic powers of government to enact laws [] or . . . adopt budgets . . . in the same way natural persons may make enduring promises about their own future behavior." *Id.* Consequently, a district court may not deny a motion to vacate on the basis that state officials once consented to entry of the injunction or delayed unreasonably in seeking relief. *See Shakman v. City of Chicago*, 426 F.3d 925, 934 (7th Cir. 2005).

The decree and its obligations must "rest on [a] rule of federal law rather than the bare consent of the officeholder." *Evans*, 10 F.3d at 479. In applying Rule 60(b)'s flexible standard, therefore, the Court "must remain attentive to the fact that federal-court decrees exceed appropriate limits if they are aimed at eliminating a condition that does not violate [federal law] or does not flow from such a violation." *Horne*, 129 S. Ct. at 2595 (internal quotations and citations omitted; brackets in original). Where no private

2

right of action exists, the decree advances no federal interests, and this Court lacks jurisdiction to enter or enforce a decree. *Id.*, at 2598 n.6. For precisely that reason, the Court in *Horne* rejected attempts to justify continuation of a consent decree on the basis that the decree was unenforceable under the No Child Left Behind Act of 2001 ("NCLB"), 20 U.S.C. § 7902, a statute that is not privately enforceable. *See id.*

Although Plaintiffs contend that the Supreme Court's decision in *Horne* has no bearing on this motion, the most recent decision cited in their opposition belies this contention. As *Horne* has been understood by the first lower court to apply it in the context of a motion to vacate a long-standing consent decree, the Supreme Court's analysis demands that the decree be not only revisited, but vacated, if it is no longer supported by a viable federal claim or is no longer warranted by changed circumstances. *See Basel v. Bielaczyk*, No. 74-40135-BC, 2009 WL 2843906 (E.D. Mich. Sept. 1, 2009). The second lower court to apply the teachings of *Horne* in a context similar to the circumstances here reached the same conclusion. *See United States v. Board of Educ. of City of Chicago,* No. 80 C 5124, 2009 WL 3111067, at *6-*7, *11 (N.D.Ill. Sept. 24, 2009) (applying *Horne* and vacating long-standing consent decree).

In *Basel,* the district court recognized that "significant changes that may 'warrant reexamination of the original judgment' include 'changes in the nature of the underlying problem, changes in governing law or its interpretation by the courts, and new policy insights.'" 2009 WL 2843906, at *5 (quoting *Horne*, 129 S. Ct. at 2593). The district court also noted *Horne*'s discussion of "sensitive federalism concerns," and the requirement that a district court apply a "flexible approach" to return responsibility for

discharging the state's obligations to the state when the circumstances warrant. *Basel*, 2009 WL 2843906, at \*5-\*6.

The district court in *Basel* held that, under the flexible standard of Rule 60(b)(5), the long-standing consent decree should be vacated because, among other things, "the decisional law regarding private rights of action pursuant to spending clause legislation, federal regulations, and § 1983 have significantly developed in ways that will have a major impact on whether Plaintiffs have valid statutory or constitutional claims." 2009 WL 2843906, at \*8.[1] After observing that, "whether the plaintiff class would have viable federal claims today is highly questionable," the court concluded that "it would not be equitable to enforce the consent judgment." *Id.* The same is true here, and the decree in this case should likewise be vacated.

---

[1] Plaintiffs cite *Basel* as support for their argument that Defendants cannot rely on Rule 60(b)(4), a provision on which Defendants have not relied, *see* Pls.' Opp. at 10, 13. but Plaintiffs ignore the core holding of *Basel* and its analysis under Rule 60(b)(5) (on which Defendants *have* relied) – an analysis that supports Defendants' position here.

Plaintiffs rely on a number of cases that fail to support their position or even the proposition for which the cases are cited. Thus, for example, in support of their subject matter jurisdiction argument, Plaintiffs cite a case where the court held that it lacked jurisdiction over counts arguing a violation of the AACWA, due to the intervening decision in *Suter v. Artist M.*, 503 U.S. 347 (1992) – just as Defendants have argued here; that court found, as Plaintiffs emphasize, that this was "not enough to render the judgment void," but it did so because of the presence in that case of "viable underlying constitutional claims" – and there are no such viable constitutional claims here. *Office of Child Advocate v. Lindgren*, 296 F. Supp. 2d 178, 185 n.4 (D.R.I. 2004). In *Angela R. v. Clinton*, 999 F.2d 320 (8th Cir. 1993), on which Plaintiffs also rely, the court rejected the defendants' claim that jurisdiction was lacking because *Suter* had not rendered plaintiffs' claims "inescapably frivolous"; nevertheless, the court directed that the consent decree be vacated, because its terms were too ambiguous to be enforced by a federal court, just as Defendants have argued here.

# ARGUMENT

## I. DEFENDANTS HAVE PROPERLY CHALLENGED THE COURT'S POWER TO ENTER AND ENFORCE THE CONSENT DECREE.

Defendants' challenge to the Court's power to enter and enforce the consent decree is not, contrary to Plaintiffs' contention, an impermissible "collateral" attack on the judgment, because the motion to vacate is filed under Rule 60(b)(5), which permits such challenges to otherwise final judgments. In consenting two decades ago to the entry of a judgment that required certain remedial action, Defendants expressly reserved the right to contest jurisdiction at any time. *See L.J. v. Massinga*, 699 F. Supp. 508, 519 (D. Md. 1988) ("In the event of subsequent litigation relating to the matters in this litigation other than in an action to enforce this Decree, defendants *retain and have the right to contest jurisdiction*, venue, and/or assert any other defenses." (emphasis added)). In settling the case, Defendants agreed only to the remedies set forth in the consent decree "without any admission of liability by any defendant for any purpose," and, therefore, the consent decree is not res judicata as to the merits of any of Plaintiffs' claims under the Adoption Assistance and Child Welfare Act of 1980 ("AACWA"),[3] the Child Abuse Prevention and Treatment Act ("CAPTA"),[4] or the Fourteenth Amendment. Finally, even if the absence of a private right of action did not divest the Court of subject matter jurisdiction to decide a case under the AACWA and CAPTA, the absence of a private

---

[3] Pub. L. No. 96-272, 94 Stat. 500. *See* 42 U.S.C. §§ 620-29i & 670-79b (codification of AACWA as amended, consisting of 42 U.S.C. Chapter 7, subchapters IV-B and IV-E, also known as Titles IV-B and IV-E of the Social Security Act).

[4] 42 U.S.C. §§ 5101-5106, as amended.

right of action under those statutes does divest the Court of the power to award a private remedy. *See Virginia Office of Prot. and Advocacy v. Virginia Dept. of Educ.*, 262 F. Supp. 2d 648, 657-58 (E.D. Va. 2003) (finding subject matter jurisdiction but no private right of action for violation of § 1415 of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C § 1415, and consequently, dismissing plaintiffs' claims).

### A. Rule 60(b)(5) Permits Modification and Termination of a Consent Decree, Notwithstanding its Status as "Final Order."

Plaintiffs exhibit a mercurial attitude toward the finality of the consent decree in this case. On the one hand, they contend it is untouchable, under principles of claim preclusion, because it is "final." On the other hand, it is not "final" at all: it has an infinite life span and can be both enforced and modified to impose new obligations throughout its life. Rule 60(b), however, recognizes that the law is not frozen in place, and provides authority for modifying or terminating a final order. "If the law then applicable says that the judgment may be reopened for certain reasons, that limitation is built into the judgment itself, and its finality is so conditioned." *Plaut v. Spendthrift Farm, Inc.*, 514 U. S. 211, 234 (1995); *see Plyler v. Moore*, 100 F.3d 365, 371 (4th Cir. 1996) ("A judgment providing for injunctive relief . . . remains subject to subsequent changes in the law. . . . . These principles apply equally to consent decrees and litigated judgments." (citations omitted)); *Benjamin v. Jacobson*, 172 F.3d 144, 161 (2nd Cir. 1999) ("The proposition that a court has the authority to alter the prospective effect of an injunction in light of changes in the law or the circumstances is, of course, well established.").

Rule 60(b) "reflects and confirms the courts' own inherent and discretionary power, firmly established in English practice long before the foundation of our Republic, to set aside a judgment whose enforcement would work inequity.'" *Plaut*, 514 U.S. at 233 (internal quotations marks omitted). Accordingly, a motion to vacate or modify a decree, filed under Rule 60(b) in the same proceeding in which the judgment was entered, is not an impermissible collateral attack on the judgment, and the doctrine of res judicata is therefore not applicable in this context. *See Frew v. Hawkins*, 540 U.S. 431, 441 (2004) (rejecting state officials' collateral challenge to judgment in enforcement proceedings but recognizing that officials could move for relief from judgment under Rule 60(b)(5)); *O'Sullivan v. City of Chicago*, 396 F.3d 843, 868 (7th Cir. 2005); *see also Agostini v. Felton*, 521 U. S. 203, 209 (1997) (holding that petitioners were entitled under Rule 60(b)(5) to relief from the operation of prospective injunction due to intervening changes in decisional law).

The Seventh Circuit has elaborated on the distinction drawn by the Supreme Court in *Frew* between an impermissible collateral attack on the terms of an injunction and a permissible challenge under Rule 60(b). In *O'Sullivan*, the defendants in a proceeding to enforce a decree claimed that the court lacked subject matter jurisdiction over the proceeding because the plaintiffs had lacked constitutional standing to bring the original action. The Court of Appeals held that the defendants could not collaterally attack the injunction in the enforcement proceeding, but could raise that claim by filing a motion under Rule 60(b) seeking relief from the judgment. *See* 396 F.3d at 867-68. While a party "may not simply ignore the decree" or attack the validity of the injunction in the

enforcement proceeding, "Rule 60(b) provides an avenue to seek relief from some or all of the requirements of the original decree." *Id.* at 864, 868.[5]

### B. Defendants Expressly Reserved the Right to Challenge Jurisdiction in Subsequent Litigation.

Section I of the consent decree entered on September 27, 1988 states as follows: "In the event of subsequent litigation relating to the matters in this litigation other than in an action to enforce this Decree, defendants retain and have the right to contest jurisdiction, venue, and/or assert any other defenses." *L.J.,* 699 F. Supp. at 519. Accordingly, the consent decree explicitly reserves to Defendants the right to challenge jurisdiction at any time and in any proceeding except a proceeding to enforce the decree.

---

[5] *Swift & Co. v. United States*, 276 U.S. 311 (1928) ("*Swift I*"), on which Plaintiffs rely, did not involve a challenge to the general subject matter jurisdiction of the court but focused instead only on whether a case or controversy had existed at the time that the court entered the judgment. The Court in *Swift I* rejected the defendants' challenge, on the ground that when the district court entered judgment it had jurisdiction "both of the general subject-matter — enforcement of the Anti-Trust Act — and of the parties." *Id.* at 858. In subsequent litigation, the Court acknowledged the power of a federal court to modify a decree. *United States v. Swift & Co.*, 286 U.S. 106, 114 (1932) ("*Swift II*"). Indeed, the Court stated that "[p]ower to modify the decree was reserved by its very terms, and so from the beginning went hand in hand with its restraints. If the reservation had been omitted, power there still would be by force of principles inherent in the jurisdiction of the chancery." *Id.* at 114-15. Other cases on which Plaintiffs rely did not involve motions filed under Rule 60 but were attempts to attack the judgments in separate proceedings or in an enforcement proceeding. *See, e.g., Travelers Indem. Co. v. Bailey*, __ U.S. __, 129 S. Ct. 2195 (2009) (enforcement proceeding); *Kontrick v. Ryan*, 540 U.S. 443 (2004) (separate proceeding); *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371 (1940) (separate proceeding); *Des Moines Navigation & R. Co. v. Iowa Homestead Co.*, 123 U.S. 552 (1887) (separate proceeding); *In re: Bulldog Trucking, Inc.*, 147 F.3d 347 (4th Cir. 1998) (separate proceeding).

This is not an enforcement proceeding[7] and, therefore, Defendants may contest jurisdiction in accordance with the express terms of the decree.[8]

### C. Res Judicata Does Not Bar the Relief Sought in Defendants' Motion to Vacate the Consent Decree.

In its 1988 order entering a preliminary injunction, the Court found that Plaintiffs had offered sufficient evidence to establish the existence of serious systemic deficiencies in the Baltimore foster care system such that "foster children are threatened with and are likely to suffer severe physical and emotional injury" and that plaintiffs were therefore entitled to a preliminary injunction. *L.J.*, 699 F. Supp. at 538 (citing *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 196 (4th Cir. 1977)). The balancing test applied by the Court in issuing the injunction is no longer valid. *See Real Truth About Obama*, *Inc. v. Federal Election Comm'n*, 575 F.3d 342, 345-47 (4th Cir. 2009) (abandoning *Blackwelder* test as inconsistent with *Winter v. Natural Res. Defense Council, Inc.*, __ U.S. __, 129 S. Ct. 365 (2008)). In light of its balancing of the equities, the Court stated that it was unnecessary to address Plaintiffs' likelihood of success on the merits, although it proceeded to do so. *See L.J.*, 699 F. Supp. at 538. During that

---

[7] A proceeding on a motion to modify a judgment is not an enforcement proceeding. *See Frew*, 540 U.S. at 440; *O'Sullivan*, 396 F.3d at 868.

[8] The cases cited by Plaintiffs in support of their assertion that "[t]his reservation of the rights to contest aspects of jurisdiction in the future is meaningless," Pls.' Opp. at 18 n.8, did not involve a reservation of the right to contest jurisdiction. Instead, they address the issue of whether the addition of a non-diverse party after the commencement of an action destroys jurisdiction that existed based on the diversity of citizenship of the original parties. *See Freeport-McMoRan Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991); *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989).

discussion, the Court opined that Plaintiffs were likely to succeed on the merits of their claims under the AACWA, CAPTA, and the Fourteenth Amendment.

Defendants appealed the Court's order and on appeal argued that there was no private right of action under the AACWA, CAPTA or the Fourteenth Amendment. The Court of Appeals found a private right of action under Titles IV-B and IV-E of the Social Security Act (the AACWA and CAPTA), which plaintiffs could enforce under 42 U.S.C. § 1983, but did not reach the merits of the Fourteenth Amendment claim. *See L.J. v. Massinga*, 838 F.2d 118, 123-24 (4th Cir. 1988). On remand, the parties entered into the consent decree. In settling the case, however, Defendants "den[ied] all of the allegations of the complaint, amended complaint, and complaint in intervention, particularly all legal contentions that any defendant has ever violated any State or federal law in the conduct of the family foster care program." *L.J.*, 699 F. Supp. at 518. "[I]n an effort to avoid further litigation," Defendants agreed to

> settlement of this matter and entry of this Consent Decree . . .without any admission of liability by any defendant for any purpose, to settle and resolve all claims for declaratory relief and equitable relief, including injunctive relief, raised in the complaint, amended complaint, and complaint in intervention, and all matters addressed in this Decree.

*Id.*

Defendants did not settle any part of the merits of the case and, therefore, the merits have neither been finally litigated nor resolved by the consent decree. *See Evans*, 10 F.3d at 477. In *Evans*, the defendants moved to vacate a consent decree under Rule 60(b)(5) on the ground that, as the result of an intervening Court of Appeals decision, it

was no longer supported by a substantial federal claim under the equal protection clause. The district court refused to vacate the decree on the basis that the decree was supported by plaintiffs' claims under the due process clause. On appeal, the district court's decision was reversed because the defendants had not settled any of the merits of the case but had "settled only the details of relief." *Evans*, 10 F.3d at 477. Like the decree in *Evans*, the consent decree in this case is not supported by a determination on the merits of any federal claim. The consent decree therefore does not create a res judicata bar as to the merits of any of Plaintiffs' claims under the AACWA, CAPTA, or the Fourteenth Amendment.[10]

---

[10] In any event, Plaintiffs have failed to state a claim under the Fourteenth Amendment for a violation of substantive due process. On several occasions, the Fourth Circuit has rejected due process claims against State social services officials that were premised on the theory of liability asserted by Plaintiffs under the Due Process Clause here. In *Milburn v. Anne Arundel County Department of Social Services*, the Court upheld the dismissal of the government entities and employees in an action brought under § 1983 for harm suffered while a child was in a foster home. *See* 871 F.2d 474, 479 (4th Cir. 1989), Likewise, in *Weller v. Department of Social Services for the City of Baltimore*, 901 F.2d 387 (4th Cir. 1990), the Court dismissed a substantive due process claim arising from abuse inflicted by the natural mother and grandmother who were given custody by the State. The Court held that, even though the State was involved in the placement of the child, the State "had no duty to provide [the child] with protective services." *Weller,* 901 F.2d at 392. In *White v. Chambliss*, the Court rejected claims by foster children who alleged "a right to affirmative state protection for children placed in foster care." 112 F.3d 731, 738 (4th Cir. 1997). The Court explained that *Milburn* was not "limited . . . to situations where parents had voluntarily placed their children in foster care, and *Milburn* was not interpreted as being so limited in subsequent Fourth Circuit cases." *White*, 112 F.3d at 738 (4th Cir. 1997). Even if foster children could state claims for violation of substantive due process, such claims would not support the consent decrees entered or proposed in this case, which require the State to comply not with the requirements of due process but with the AACWA and CAPTA.

Plaintiffs cite several cases from other circuits for the proposition that a substantive due process violation may properly be brought by a child in foster care. *See*

## II. THE CONSENT DECREE AND PROPOSED DECREE ARE NOT SUPPORTED BY A FEDERAL CLAIM.

Plaintiffs attempt to prop up their claims by pointing to a 1994 amendment of the Social Security Act, which clarified that, in an action to enforce any provision of the Social Security Act, the provision is not to be deemed unenforceable for the *sole* reason that it is included in a state plan. *See* Improving America's Schools Act of 1994, Pub L. No. 103-382, 108 Stat. 3518, 4057-58 (codified at 42 U.S.C. § 1320a-2). Congress, however, specifically declined to overrule the holding of *Suter v. Artist M.*, 503 U.S. 347 (1992), with respect to private causes of action under the AACWA, and the 1994 amendment was not designed to create private causes of action.

Plaintiffs read the 1994 amendment language broadly, describing it as a "fix" and attributing to it the power to supply a private right of action for their claims. Plaintiffs attribute a much broader impact to the 1994 amendment than have the courts. Indeed, the Supreme Court in its 2002 decision in *Gonzaga* explicitly reaffirmed its holding in *Suter*, without any suggestion that the 1994 amendment undermined *Suter*'s validity, and without limiting the holding in *Suter* to any particular subsection of the Act. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 281 (2002) ("Since the Act conferred no specific, individually enforceable rights, there was no basis for private enforcement, even by a class of the statute's principal beneficiaries." (citing *Suter*, 503 U.S. at 357)).

Pls.' Opp. at 24. These cases rest on a finding of a "special relationship" between the foster child and the state. *See id.* at 24 n.12. The Maryland Court of Appeals has held, however, that no such special relationship exists *See Pendleton v. State*, 398 Md. 447, 487 (2007) ("Removing the [child] from the care of his mother and placing him in the foster care program . . . was not an 'affirmative act' sufficient to create a special relationship.").

The Fourth Circuit, like the majority of courts that have considered the matter, has interpreted the 1994 amendment narrowly. Specifically, the Fourth Circuit has ruled that the amendment did not alter *Suter's* holding that there is no private cause of action under the AACWA, and, furthermore, that the 1994 amendment had no effect on *Suter's* application to future cases. *See White v. Chambliss*, 112 F.3d 731, 739 & n.4 (4th Cir. 1997).[11] In *White*, the Court held that no private right of action exists to enforce several of the Act's provisions (42 U.S.C. §§ 671(a)(1), (10), and (15)). *See* 112 F.3d at 739 & n.4. The Court then addressed the effect of what Plaintiffs refer to as the "*Suter* Fix":

---

[11] Plaintiffs cite several cases decided after *Suter* that have found that foster children have a private right of action to enforce provisions of the AACWA. *See* Pls.' Opp. at 35 & nn.23-24. The analysis in these cases, *see*, *e.g.*, *Brian A. v. Sundquist*, 149 F. Supp. 2d 941, 947-49 (M.D. Tenn. 2000); *Marisol A. v. Giuliani*, 929 F. Supp. 662, 683 (S.D.N.Y. 1996); *Jeanine B. v. Thompson*, 877 F. Supp. 1268 (E.D. Wis. 1995), most of which predate *Gonzaga*, is inconsistent with *Gonzaga's* affirmation of its *Suter* holding and with *Gonzaga's* requirement that a court find "an unambiguously conferred right to support a cause of action." *Gonzaga*, 536 U.S. at 283. The analysis adopted by these courts is also foreclosed by the Fourth Circuit's holding in *White v. Chambliss*, 112 F.3d 731 (4th Cir. 1997), which – unlike the cases relied on by Plaintiffs – is binding on this Court.

Other cases relied on by Plaintiffs likewise fail to support their position. Thus, for instance, in *Norman v. McDonald*, 930 F. Supp. 1219 (N.D. Ill. 1996), the court held only that the defendants could not raise the issue in an enforcement proceeding. And in *Missouri Child Care Association v. Martin*, 241 F. Supp. 2d 1032 (W.D. Mo. 2003), the court found a private right of action possessed not by foster children, but by institutional foster care providers seeking to enforce reimbursement provisions of the Act. *Accord California Alliance of Child & Family Servs. v. Allenby*, 459 F. Supp. 2d 919 (N.D. Cal. 2006); *see also ASW v. Oregon*, 424 F.3d 970, 978-79 (9th Cir. 2005) (holding that adoptive parents had federally enforceable right to individualized payment determinations and to a hearing to challenge benefit reductions); *Ball v. Rodgers*, 492 F.3d 1094, 1112 (9th Cir. 2007) (finding private right of action under Medicaid Act for beneficiaries to enforce Act's free choice provisions).

> The congressional response to *Suter* codified at 42 U.S.C. § 1320a-2 does not alter our view. . . . Congress made clear that the statute was 'not intended to alter the holding in *Suter v. Artist M.* that section 671(a)(15) . . . is not enforceable in a private right of action.' Lastly, *Suter* itself was not a novel holding, but rather rested upon settled legal principles with regard to private rights of action in the context of the AACWA.

*White*, 112 F.3d at 738 n.4 (quoting 42 U.S.C. § 1320a-2); s*ee also Olivia Y. v. Barbour*, 351 F. Supp. 2d 543, 560 (S.D. Miss. 2004) ("[T]he purpose of the amendment was simply to clarify that 'the mere fact that an obligation is couched in a requirement that the State file a plan is not itself sufficient grounds for finding an obligation unenforceable under § 1983.'" (quoting *Harris v. James*, 127 F.3d 993, 1003 (11th Cir. 1997))); *Carson P. v. Heineman*, 240 F.R.D. 456, 538-39 (D. Neb. 2007) (adopting the holding of "most courts" that "[the amendment] overruled only that portion of the opinion identifying and allowing a court to rely exclusively on the 'state plan' criteria in determining the existence of a federal right"); *Charlie H. v. Whitman*, 83 F. Supp. 2d 476, 481-83 (D.N.J. 2000) ("[T]his amendment did not overrule *Suter* . . . [but] only forecloses the refusal to find a federal right enforceable under § 1983 because the statutory provision may be included in a section requiring a State plan or specifying the required contents of such a plan.").

While Plaintiffs criticize the Fourth Circuit's interpretation of *White*, there is no doubt that it is controlling here. Plaintiffs cite several cases decided by federal district courts that have interpreted the 1994 amendment in a manner contrary to the holding of the Fourth Circuit in *White*, but they have no weight in this Circuit. *See* note 11 above. The cases cited by Plaintiffs are at odds with both Fourth Circuit precedent and the

better-reasoned decisions of other courts outside the Circuit that have followed the Supreme Court's decision in *Gonzaga.*

Recently, in *D.G. v. Henry*, 594 F. Supp. 2d 1273 (N.D. Okla. 2009), the district court rejected claims under § 1983 for alleged violations of the AACWA (including § 671(a)(16). Applying the *Gonzaga* test, the court found that Congress has not spoken "with a clear voice" and has not "manifested an unambiguous intent to confer individual rights" under the AACWA. *D.G.*, 594 F. Supp. 2d at 1278. Accordingly, the court dismissed the plaintiffs' claims alleging violations of the AACWA. *Id*. at 1280-81. *see also Braam v. State,* 81 P.3d 851, 864-65 (Wash. 2003) (under *Gonzaga* test foster children had no private right of action under §§ 671(1)(16) and 675(1) of the AACWA).[13]

_____

[13] Plaintiffs rely on *D.G.* and other cases as support for their assertion that courts have "granted class-wide relief since *Suter.*" *See* Pls.' Opp. at 20 n.9. These citations are misleading. A number of these cases have found no private right of action under the AACWA and CAPTA, and have proceeded instead on constitutional and state statutory claims or under other federal statutes. *See*, *e.g.*, *Eric L. v. Bird*, 848 F. Supp. 303, 312 (D.N.H. 1994) (holding that claims under § 671(a)(9), (1), (11), (14), and (16) were foreclosed by *Suter*; rejecting claims under § 625 or § 674, because those are "merely definitional and cannot supply a firm basis for describing rights privately enforceable under section 1983"); *Aristotle P. v. Johnson*, 721 F. Supp. 1002, 1012 (N.D. Ill. 1989) (right to be placed in least restrictive, most family-like setting held too vague and amorphous to be judicially enforceable); *Charlie H.*, 83 F. Supp. 2d at 481-83 (rejecting claims under §§ 620-627, 670-679a, including §§ 622(b)(9), 671(a)(18), 674(d))); *Olivia Y.*, 351 F. Supp. 2d at 557-65 (no right of action under §§ 622(b)(10)(B)(ii), 671(a)(16), or 675(5) for a "case record review system"; no cause of action under § 671(a)(10) for state plan "reasonably in accord with recommended standards of national organizations"; and no cause of action for violation of § 675(a)(1) requirement of case plan with "specific mandated elements including documentation of the steps taken to achieve permanency"); *see also Joseph A. v. Ingram*, 275 F.3d 1253, 1267-68 (10th Cir. 2002) (abstaining from enforcement of revised consent decree between foster children and state department of human services).

Plaintiffs' interpretation of the 1994 amendments is also inconsistent with subsequent congressional action. In 1996, Congress amended the AACWA, explicitly granting a private right of action only to those individuals aggrieved by a violation of one provision of the Act only – § 671(a)(18) (prohibiting the use of "race, color, or national origin" as the basis for denying or delaying placement of a child for adoption or foster care). *See* Small Business Jobs Protection Act of 1996, Pub. L. No. 104-188, 110 Stat. 1755, 1903-04 (codified at 42 U.S.C. §§ 671, 674, 1996b, 5115a). Congress's inclusion of a private right of action to enforce § 671(a)(18) would have been unnecessary if the 1994 amendments had created rights of action in the way that Plaintiffs contend. The 1996 creation of a limited private right of action with respect to a single provision of the AACWA is "strong evidence that Congress did not intend these other various State plan elements in 42 U.S.C. § 671(a) to confer rights enforceable pursuant to § 1983." *Charlie H.*, 83 F. Supp. 2d at 481-83; *accord Alger v. County of Albany, N.Y.*, 489 F. Supp. 2d 155, 158 (N.D.N.Y. 2006); *Daniel H. v. City of New York*, 115 F. Supp. 2d 423, 428 (S.D.N.Y. 2000); *see also Virginia Office of Prot. & Advocacy*, 262 F. Supp. 2d at 657-58 (it would defy *Gonzaga's* "clear statement rule" for court to infer that Congress intended to create private right of action under subsection of IDEA that lacked express granting language where Congress had expressly granted private right of action under different subsection).

Plaintiffs' analysis cannot be reconciled with the Supreme Court's unequivocal statement in *Gonzaga*: "We now reject the notion that our cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983,"

including a manifestation in the statute "of an intent to create not just a private *right* but also a private *remedy*."  536 U.S. at 283-84 (citing *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)) (internal quotation marks omitted; emphasis in original).

## III.  THE CONSENT DECREE SHOULD BE VACATED, AND THE COURT SHOULD DECLINE ENTRY OF THE PROPOSED DECREE, BECAUSE PROSPECTIVE ENFORCEMENT WOULD BE INEQUITABLE.

The Supreme Court's decision in *Horne v. Flores* makes clear that federal courts must apply a flexible approach in assessing equitable factors under Rule 60(b)(5) when evaluating requests by state officials to modify or end court oversight, where that oversight no longer advances federal interests and as a result improperly invades and undermines "core areas of state responsibility."  129 S. Ct. at 2593.  Where a consent decree does not spring from a federal dispute, it does not advance federal interests and should be neither entered nor enforced by a federal court.  *See O'Sullivan*, 396 F.3d at 868; *David B. v. McDonald*, 116 F.3d 1146, 1150 (7th Cir. 1997); *Evans*, 10 F.3d at 479-80, 483; *see also Firefighters v. Stotts*, 467 U.S. 561, 576 n.9 (1984) ("[T]he District Court's authority to adopt a consent decree comes only from the statute which the decree is intended to enforce, not from the parties' consent to the decree." (citations omitted)); *accord Horne*, 129 S. Ct. at 2598 n.6.

The district court has the "responsibility to identify the rule of federal law supporting a consent decree binding the political arms of government, and the corresponding obligation to permit new public officials to set their own policy within the limits established by federal law."  *Evans,* 10 F.3d at 479-80 (citing *United States v.*

*Board. of Educ.*, 799 F.2d 281 (7th Cir. 1986)); *Alliance to End Repression v. Chicago*, 742 F.2d 1007 (7th Cir. 1984) (en banc); *White v. Roughton*, 689 F.2d 118 (7th Cir. 1982)). "[T]he court must ensure that there is a substantial federal claim, not only when the decree is entered but also when it is enforced, and that the obligations imposed by the decree rest on this rule of federal law rather than the bare consent of the officeholder." *Evans*, 10 F.3d at 479.

Because institutional reform cases have a different dynamic than other cases, they present additional concerns, as the Supreme Court explained in *Horne*. This type of litigation "present[s] a risk of collusion between advocacy groups and executive officials who want to bind the hands of future policymakers." 129 S. Ct. at 2594 (citations omitted). "[P]ublic officials sometimes consent to, or refrain from vigorously opposing, decrees that go well beyond what is required by federal law." *Id.* Because these decrees "bind state and local officials to the policy preferences of their predecessors, [they] may thereby improperly deprive future officials of their designated legislative and executive powers." *Id.*

Applying the "flexible standard" for institutional reform decrees endorsed by the Supreme Court in *Horne*, courts have ordered a fresh look at long-standing decrees in order to determine whether the decrees still in fact further federal interests and do not violate core principles of federalism. Thus, for instance, in *O'Sullivan*, the Seventh Circuit instructed the district court to "consider critically whether changes in the legal landscape since 1983 require modification or vacatur of that decree pursuant to Rule 60(b)." 396 F.3d at 868. In *Evans*, the Seventh Circuit held that a decree that was

"properly supported when the district court entered the injunction" should not be enforced, because, due to a change in law, its federal underpinning had vanished by the time the Court of Appeals decided the case. 10 F.3d at 480, 483; *see also David B.*, 116 F.3d at 1150 (instructing district court on remand to determine "whether a substantial federal claim supports the decree" governing operation of state's social-welfare system); *Komyatti v. Bayh*, 96 F.3d 955, 957 (7th Cir. 1996) (emphasizing, in § 1983 prison reform litigation case, that district court, on remand, "if requested to alter the consent decree previously entered by the court, must take into account the provisions of this new statute"); *United States v. Board of Educ.,* 2009 WL 3111067, at *6-*7, *11; *Basel*, 2009 WL 2843906, at *6-*8.

"Consent alone is insufficient to support a commitment by a public official that ties the hands of his successor." *Evans*, 10 F.3d at 478. The decree and its obligations must "rest on [a] rule of federal law rather than the bare consent of the officeholder." *Id*. at 479. For that reason, in *Shakman v. City of Chicago*, the court reversed a district court order that denied modification under Rule 60(b)(5) on the basis that the city had delayed unreasonably long in moving for relief from the judgment. *See* 426 F.3d 925. Instead, the court directed the lower court to consider the nature of the litigation, the prejudice to the present officials and the public they represent, considerations of public interest and federalism, and whether the decree is under current law one that should be enforced by a federal court. *See id*. at 934-36.

Whereas Plaintiffs view the longevity of the consent decree in this case as a reason for leaving it in place, the Supreme Court has a different, and more sensible, view:

"[T]he longer an injunction or consent decree stays in place, the greater the risk that it will improperly interfere with a State's democratic processes." *Horne*, 129 S. Ct. at 2597. The Court's observations about the consent decree at issue in *Horne* could just as readily have been made with respect to the one at issue in this case. For more than two decades, "the orders of a federal district court have substantially restricted the ability of the State of [Maryland] to make basic decisions regarding [child welfare] policy, appropriations, and budget priorities." *Id.* at 2593 n.3. Yet, these orders are based on a complaint that states no federal claim and, therefore, they advance no federal interests. *See Horne*, 129 S. Ct. at 2598; *see also O'Sullivan*, 396 F.3d at 864. Accordingly, they exceed the authority of the federal courts, and "[c]ontinued enforcement therefore is inequitable within the meaning of Rule 60(b)(5)." *Horne*, 129 S. Ct. at 2597; *Evans*, 10 F.3d at 480.

## CONCLUSION

The consent decree should be vacated and the motion to enter the revised consent decree should be denied.

Respectfully submitted,

DOUGLAS F. GANSLER
Attorney General of Maryland

_____/S/_____
JOHN B. HOWARD, JR.
Deputy Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
(410) 576-6300; (410) 576-7003 (fax)

– and –

DAVID E. BELLER
JULIA DOYLE BERNHARDT
MILLICENT EDWARDS GORDON
Assistant Attorneys General
311 West Saratoga Street, Suite 1015
Baltimore, Maryland 21201
(410) 767-7726; (410) 333-0026 (fax)

Attorneys for Defendants